**STATE of Iowa, Appellee,**

v.

**Michael Wayne RIPPERGER, Appellant.**

**No. 92–813.**

Court of Appeals of Iowa.

Jan. 25, 1994.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Patrick C. Jackson, County Atty., and John Jellineck, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., SCHLEGEL, J., and PERKINS, Senior Judge.*

SCHLEGEL, Judge.

The defendant, Michael Ripperger, appeals his convictions, following a jury trial, for kidnapping in the first degree and burglary in the first degree in violation of Iowa Code sections 710.2 and 713.3 (1991). He contends the district court erred in: (1) denying his motion to suppress; (2) admitting statistical evidence in relation to DNA fingerprinting; (3) admitting evidence of a prior crime to establish identity; (4) denying his discovery request; and (5) submitting a jury instruction explaining confinement and removal erroneously.

* Senior judge from the 5th judicial district serving on this court by order of the Iowa Supreme Court.

Annette Marmion's house was broken into by a man wearing a ski mask who bound and blindfolded her and raped her at knifepoint. The State charged Ripperger with first-degree burglary and kidnapping and two counts of second-degree sexual abuse.

Prior to trial Ripperger filed a motion to suppress the fruits of the search warrant and the nontestimonial identification order because they allegedly violated the Fourth Amendment for several reasons. First, he claimed the voice identification procedure carried out by the police impermissibly suggested that he was the offender. The procedure was conducted at his parole officer's office during a conversation about a denial of a discharge and a referral to a perpetrator's program. Second, Ripperger claimed that material misrepresentations were contained in the search warrant and nontestimonial applications. Third, he claimed that under the totality of the circumstances test, probable cause was lacking. Finally, he claimed the nontestimonial identification order was deficient. The district court overruled Ripperger's motion to suppress.

Ripperger also filed two motions in limine. The first one requested the exclusion of DNA evidence on the basis that the FBI's statistical results were unreliable due to their improper use of the "product rule." The second motion requested the exclusion of evidence that he had sexually abused another victim in 1983 by entering her home, covering his face with a shirt, and threatening her with a knife. Ripperger claimed the 1983 crime was not sufficiently similar to the present one to fall within a rule 404(b) exception. He also claimed the evidence was unfairly prejudicial. Both motions were overruled.

Ripperger also filed a motion to produce the DNA test results prepared for the present case, correspondence between the FBI and Dr. Eisenberg concerning FBI mistakes in DNA testing (in an unrelated case), and a copy of an unpublished report by the National Academy of Sciences regarding recommended procedures and protocol which are not practiced by the FBI. Ripperger

claimed the last two items were material to his defense. The district court granted the request for DNA results concerning the present case but overruled the other requests.

The case proceeded to a jury trial. Ripperger objected to the district court's jury instruction defining confinement and removal. He claimed the court should have inserted the words "substantially" and "significantly" in the jury instruction. The district court overruled Ripperger's motion noting the court's desire not to depart from the present language of the uniform instructions.

Ripperger was found guilty of first-degree kidnapping and first-degree burglary and was sentenced to life imprisonment. Ripperger now appeals. We affirm.

## I. Denial of Defendant's Motion to Suppress Evidence.

Ripperger's first contention on appeal is that the trial court erred in four respects in denying his pretrial motion to suppress evidence. He alleges: (1) the voice identification procedure was impermissibly suggestive; (2) material misrepresentations were contained in the warrant application and nontestimonial application; (3) probable cause was lacking under the totality of the circumstances test; and (4) the nontestimonial identification order was deficient. Since Ripperger asserts violation of a constitutional safeguard, our standard of review is a de novo evaluation of the facts based on the totality of the circumstances. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980).

### A. Voice Identification Procedure.

■ Ripperger first claims his due process rights were violated when the victim in this case and another victim (whose sexual abuse complaint was being investigated by police) were brought to Ripperger's parole office to listen to his voice. Impermissibly suggestive identification procedures causing a likelihood of irreparable misidentification violate a defendant's right to due process. *See Manson v. Brathwaite*, 432 U.S. 98, 109, 116, 97 S.Ct.

2243, 2250, 53 L.Ed.2d 140, 151, 153 (1977); *State v. Mark*, 286 N.W.2d 396, 403, 405 (Iowa 1979); *State v. Salazar*, 213 N.W.2d 490, 493 (Iowa 1973). The relevant due process test to be applied was articulated by the United States Supreme Court in *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). Identification testimony is prohibited where the confrontation conducted is unnecessarily suggestive and conducive to irreparable mistaken identification. *Id.* This test has also been discussed by the Iowa Supreme Court. *See Salazar*, 213 N.W.2d at 493; *see also State v. Ash*, 244 N.W.2d 812, 814 (Iowa 1976).

■ We review the circumstances on a case-by-case basis to determine whether the identification procedure at issue was so inherently unreliable that due process would bar its admission. *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155. To succeed on this claim, the defendant must establish that the procedure was in fact impermissibly suggestive and that a substantial likelihood of irreparable misidentification existed.[1] *Id.; State v. Neal*, 353 N.W.2d 83, 86–87 (Iowa 1984).

■ Ripperger contends that the procedure used in this case was impermissibly suggestive since the two women were aware that the procedure was being conducted at the office of the defendant's parole officer and since a discussion occurred concerning a perpetrators' program and a denial of a discharge. We do not find the voice identification procedure in the present case to be impermissibly suggestive. Although the location of the parole office in this case suggests Ripperger is a criminal, it does not suggest he is the criminal who raped these victims. The record reflects that the victims listened to the voice of another man at the parole office as well; Ripperger's voice was in no way highlighted before the women.

■ Furthermore, the discussion that occurred at the parole office concerning a perpetrators' program and denial of a dis-

---

1. If the procedure is not impermissibly suggestive, the identification is not suppressible, and any shortcomings in the identification procedure go only to the weight of the evidence. *State v. Neal*, 353 N.W.2d 83, 87 (Iowa 1984).

charge failed to render the voice identification procedure impermissibly suggestive. The procedure did not point to Ripperger as the perpetrator here, or even as a sex abuser. No mention was made during the interview of any subject that was sexual in nature. As the parole officer noted, "I did not use the word sex or sexual or refer to sex in any form.... I was as ambiguous about it as I could be." Ripperger did not discuss his prior conviction in detail, nor did he mention anything pertaining to rape. The witnesses in the present case were at no time told that the police believed the perpetrator was present.

Because we conclude that none of the voice identification procedures used were impermissibly suggestive, we decline to address the second prong of the test: whether a substantial likelihood of irreparable misidentification existed. See id. at 87.

### B. *Material Misrepresentations.*

■ Ripperger next claims that the search warrant in the present case contained false statements and omitted material facts and was, therefore, invalid. To impeach a search warrant, the defendant must make the following showing:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667, 682 (1978). The remedy for such a Fourth Amendment violation is to excise the false statements from the warrant application. If the remaining contents of the application fail to establish probable cause, the fruits of the search must be suppressed. *Id.* at 171–72, 98 S.Ct. at 2684–85, 57 L.Ed.2d at 682. "The omission of facts rises to the level of misrepresentation only if the omitted facts 'cast doubt on the existence of probable cause.'" *United States v. Ellison,* 793 F.2d 942, 947 (8th Cir.1986) (citation omitted).

■ Ripperger argues that police had no evidence which singled him out as the perpetrator. He argues that in order to gain the search warrant, police constructed the warrant application in a fashion which left out key facts crucial to the determination of probable cause. Ripperger points to Officer Hedlund's testimony at the suppression hearing as proof that police made no attempt to include all of the truth in the application. Officer Hedlund testified that he felt he had no duty to include facts in the warrant application which tended to show that the suspect (Ripperger) was not guilty. Ripperger argues this prevented the magistrate from exercising his function of independently reviewing the facts to determine whether probable cause existed, citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Having reviewed Ripperger's claimed misrepresentations or omissions, we conclude none of the specific complaints made has merit. The record does not support Ripperger's contentions of negligence or mistake, nor does it support allegations of intentional falsehoods, reckless disregard, or material omissions. While Officer Hedlund observed at the suppression hearing that he focuses more on those facts supporting the issuance of a warrant, he testified that in presenting the facts of the various rapes in the present application, he was "in fact pointing out dissimilarities" as well as similarities.

Furthermore, an officer's concentration on the supporting facts would not be fatal to the warrant. In *State v. Johnson,* 312 N.W.2d 144, 146 (Iowa App.1981), we stated:

> [W]e believe that the State is not required to present all inculpatory and exculpatory evidence to the magistrate for this determination, but is required only to provide that evidence which would cause a person of reasonable prudence to believe that evi-

dence of a crime was being concealed on the premises to be searched.

We conclude the trial court was clearly able to carry out its function as described in *Gates,* discussed below, and was presented with all material facts. Ripperger's claim to the contrary is without merit.

### C.  *Totality of the Circumstances.*

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the court adopted the totality of the circumstances test in determining probable cause for the issuance of a search warrant, stating:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for … conclud[ing]" that probable cause existed.

*Id.* at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

Probable cause to search requires a probability determination as to the nexus between criminal activity, the things to be seized and the place to be searched. *State v. Seager,* 341 N.W.2d 420, 427 (Iowa 1983). The quantum of information needed to establish probable cause is less than that required for conviction. *State v. Bousman,* 387 N.W.2d 605, 609 (Iowa 1986).

As noted in *Gates:*

> Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."

*Id.* 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969)).

Having applied these guiding principles to the instant case, we conclude the information contained in the warrant application established probable cause. The State concedes that consideration of Ripperger's refusal to consent to a blood test was improper. The defendant's refusal to consent to a blood test cannot be used to support probable cause because such use denies the defendant's Fourth and Fifth Amendment rights. *See United States v. Thame,* 846 F.2d 200, 207 (3d Cir.), *cert. denied,* 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 333 (1988). However, even after this statement of the application is excised, the trial court was presented with abundant evidence regarding the description of the intruder, his modus operandi, and the officers' observations of the defendant to cause a person of reasonable prudence to believe evidence of a crime was being concealed in Ripperger's home.

### D.  *Nontestimonial Identification Order.*

Next, Ripperger asserts the nontestimonial identification order that he was served was deficient in that it did not comply with Iowa Code section 810.8(4) (1991). Iowa Code chapter 810 permits the district court to enter a nontestimonial identification order requiring an individual who is suspected of committing a felony to submit to certain identification procedures. Iowa Code §§ 810.1 and 810.6 (1991). Iowa Code section 810.8 defines the contents of the nontestimonial identification order. That section provides in relevant part:

> The order shall be directed to the person named or described in the application and shall inform the person of all of the following:
>
> \*  \*  \*  \*  \*  \*
>
> (4) The grounds to suspect that the person named in the affidavit committed the felony specified therein.

In the present case, it is undisputed that the district court specifically deleted from the order the grounds for suspecting that the

defendant committed the alleged crimes. Therefore, it is true that the defendant was not given a written statement of the grounds for the issuance of the nontestimonial identification order. Citing *State v. Iowa District Court*, 472 N.W.2d 621 (Iowa 1991), the defendant argues his Fourth Amendment right to privacy was therefore denied.

In *Iowa District Court* the defendants moved to suppress all evidence obtained in the search of their residence, arguing the warrant was issued without the judicial findings of confidential informant reliability required by Iowa Code section 808.3. *Id.* at 622. The supreme court held that the plain language (use of the term "shall") of section 808.3 makes the magistrate's credibility findings obligatory, not optional. *Id.* at 624. The court found that the failure of the warrant application to state why a police officer credited the stories given by unnamed informants as trustworthy, as well as the failure of the issuing magistrate to explain why he credited the stories, resulted in the warrant not complying with the requirements of section 808.3. *Id.* The court remarked that to condone such a lack of compliance with the statute would amount to its judicial repeal. *Id.* at 625.

Ripperger argues that the supreme court's ruling in *Iowa District Court*—that failure of the trial court to comply with a mandatory statutory duty under section 808.3 violates the requirements of the Fourth Amendment—indicates that the failure to follow the mandates of section 810.8(4) similarly constitutes a Fourth Amendment violation. We disagree with the defendant's argument. We find the present case to be distinguishable from *Iowa District Court*.

In *Iowa District Court* the supreme court determined that the incompleteness of the warrant documents revealed a disregard for the legal requirements of section 808.3 and, more importantly, "a lack of compliance with the statute." In the present case, service of the nontestimonial identification order on the defendant did substantially comply with the requirement of section 810.8(4) that the order inform the person named in the affidavit of the grounds to suspect that the person named committed the felony specified therein.

Although the order itself did not specify the grounds of suspicion, the record reveals the police officers who served the order upon Ripperger substantially complied with the statute. Agent Hedlund testified:

Again, as Detective Grimshaw indicated in his testimony, Mr. Ripperger was advised that he was being considered a suspect in the sexual assault investigation that occurred in April and also the one in February, and the reasons he was being considered he was told was the fact that he lived in close proximity to one victim, and he, in fact, did know the second victim, that being the victim of the April 18th assault.

He was also told that he fit the physical description of the suspect. We also told Mr. Ripperger, and this was on the date that the non-testimonial was served on him, that he was consistent—or that his physical characteristics were consistent with the suspect along the lines of height, weight, and hair color and length.

As the trial court ruled after the motion to suppress hearing, "the facts here are undisputed that Officer Darren Grimshaw of the Burlington Police Department did describe at length verbally to the defendant the grounds for the order." Although the better practice would clearly have been to attach the probable cause affidavit, we conclude the defendant has not been prejudiced by reason of this omission. We find the defendant was made aware of the grounds of suspicion through a detailed discussion with the officers serving the order. Accordingly, we determine that Ripperger was not denied his rights under the Fourth Amendment.

Furthermore, we reject the defendant's contention that the magistrate that issued the order failed to act in a neutral and detached manner. The information contained in the application provided "reasonable grounds" to suggest that Ripperger had committed a felony, as required by the statute. No indication exists that the trial court improperly found that nontestimonial samples were required from the defendant. The district court did not err in failing to suppress

the evidence gained from the nontestimonial identification procedures.

## II. *Admission of Other Crimes/Bad Acts Evidence.*

Next, Ripperger contends the trial court abused its discretion in admitting other crimes/bad acts evidence pursuant to Iowa Rule of Evidence 404(b). We review for an abuse of discretion. In order to show an abuse of discretion, one generally must show that the court exercised its discretion "'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)).

> Iowa Rule of Evidence 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The purposes listed in the rule are not exclusive."

*State v. Plaster*, 424 N.W.2d 226, 228 (Iowa 1988) (citing *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987)).

> The key is "whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit wrongful acts." *Barrett*, 401 N.W.2d at 187. [Citation omitted.] If the evidence meets this litmus test, "it is prima facie admissible, notwithstanding its tendency to demonstrate the accused's bad character." *Barrett*, 401 N.W.2d at 187. In determining whether evidence of "other crimes, wrongs, or acts" is admissible, the trial court must employ a two-step analysis. The court must first decide whether the evidence is relevant. If the court finds that it is, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *State v. Kern*, 392 N.W.2d 134, 136 (Iowa 1986); Iowa R.Evid. 403. A positive finding as to the

second step overcomes the evidence's prima facie admissibility. *Barrett*, 401 N.W.2d at 187 n. 2.

*Plaster*, 424 N.W.2d at 229.

> Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. The test is "whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." [Citation omitted.]

*Id.*

In the present case, the State contends that evidence of a 1983 sexual abuse incident involving the defendant—resulting in the defendant's conviction of burglary (following a plea bargain in which the sexual abuse charge was dismissed)—was relevant to establish the defendant's identity. We agree with the State that the evidence regarding the prior sexual abuse incident is probative on the issue of Ripperger's identity. The record reveals that the similarities between the 1983 incident and the present incident are sufficiently distinctive to support the admission of the evidence.

As the district court noted:

> In the 1983 event which led to the conviction in Scott County, the victim was asleep in her bedroom at her home.... In the current case, [the victim] was asleep on a sofa in her home.... In each instance the victim awoke to find—well, in the case of [the 1983 victim] to find this defendant standing in her bedroom. In the case of Miss Marmion, she awoke sometime after 11:30 p.m. when she observed a person entering her living room.
>
> In the case of—in 1983, [the victim] observed that the individual who entered her bedroom had a shirt or a piece of clothing tied over his face to conceal his identity. In the case in 1991, February 23rd, the assailant had a dark blue knit stocking cap pulled over his face which appeared to have cutout eye holes, again, in an effort to conceal the identity of the person.

In the 1983 case ..., the defendant was carrying a folding knife which he opened, and at some point, at least, he put it against her throat with directions to be quiet. In this case, that is, the current case before the Court, the assailant was holding a folding knife in his left hand, and he held it next to Marmion's head, and she was told to be quiet, although the threat there also included the use of a gag.

In the 1983 case in Scott County, [the victim] was pushed back onto the bed, the defendant pulled down his pants, got on top of [the victim], and had vaginal intercourse with her. In the current case, the assailant, after removing to the basement, forced both anal and vaginal intercourse upon the victim.

In the case in Scott County, the defendant after the fact was over or the event was over commented that—about the matter of pregnancy, and that same issue was addressed by the assailant in the Marmion incident on February 23, 1991.

In both instances, entry was forced into the home. In the 1983 case, the entry was forced through a—by cutting a screen on a window, and in the event in February 23, 1991, at the Marmion residence, entry was gained by forcing a basement door.

In both instances, there was a smell of alcoholic beverage or beer noted on the assailant.

In both instances—well perhaps approach this differently. In the [1983] incident, the defendant lived some three blocks from the home of [the victim], and in the case at bar, the defendant lived some 300 feet as the crow flies from the residence of Miss Marmion.

In the [1983] case the [victim] was instructed by the defendant not to leave her room after the defendant left. In the case at bar, Miss Marmion was told not to move for 15 minutes—the language used, that she would not know where he was.

It's also noteworthy in the Marmion—or in the [other] incident, the assailant-defendant wore no glasses, is a white male, some six foot tall with brown hair, and in the Marmion incident, that is the case at bar, the assailant wore no glasses, was a white male, some six foot tall with brown hair. It's also noteworthy that there were threats made in both instances.

■ Once evidence of other crimes/bad acts is deemed relevant, the trial court must determine, within its discretion, whether the danger of unfair prejudice created by the admission of the evidence substantially outweighs its probative value. *State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979).

"Unfair prejudice" has been defined as "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." *Plaster*, 424 N.W.2d at 231.

As applied to other-crimes evidence, one commentator suggests

> balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to over-mastering hostility.

*Id.* at 232 (citing *McCormick on Evidence* § 190, at 453 (E. Cleary 2d ed. 1972)).

■ Applying these guiding legal principles in the present case, we cannot say the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The district court did not abuse its discretion in admitting the prior crimes/ bad acts evidence.

### III. *Denial of Defendant's Discovery Request.*

■ Ripperger's next complaint is that the trial court abused its discretion in refusing to compel the State to produce a letter to the FBI laboratory concerning a mistake made in DNA testing procedures as well as a soon-to-be-published article concerning DNA testing protocols. We find this contention to be without merit.

In the instant case, defense counsel requested a copy of correspondence between an FBI employee and another doctor concerning an alleged mistake made in a case *unrelated* to the present case. Defense counsel also requested a copy of a not-yet-published article by the National Academy of Sciences "which contains certain recommendations concerning practices, procedures, and protocol which the FBI does not follow or consider necessary."

Pursuant to Iowa Rule of Criminal Procedure 13(2)(b)(1), the trial court has discretion in determining whether to compel the State to turn over materials requested in a reciprocal discovery request. *See also State v. Groscost,* 355 N.W.2d 32, 35 (Iowa 1984); *State v. Kase,* 339 N.W.2d 157, 159 (Iowa 1983). The court may grant the defendant's discovery request when the requested items "are material to the preparation of his or her defense, or are intended for use by the state as evidence at the trial, or were obtained from or belong to the defendant." Iowa R.Crim.P. 13(2)(b)(1).

We conclude the requested correspondence was neither material to the present case nor intended for use by the State as evidence. The defendant was free to attempt to impeach the FBI through cross-examination of its experts, through the direct testimony of the defense's own experts, and through the use of the FBI's reports. In addition, the defendant had the opportunity to question the FBI's expert witness regarding alleged past mistakes.

■ Similarly, we cannot say the trial court abused its discretion by refusing to compel the FBI to produce a copy of the unpublished report. The fact that the article discussed protocol not subscribed to by the FBI does not entitle the defendant to its production. Again, Ripperger was free to explore, and indeed did explore at length, the assumptions used and the protocol followed or not followed by the FBI. No abuse of discretion was made by the trial court in denying the defendant's production request.

### IV. Submission of Jury Instruction Defining Confinement and Removal.

The next issue raised in Ripperger's appeal is whether the district court erred in submitting to the jury the uniform jury instruction regarding confinement and removal. Ripperger complains the current uniform jury instruction does not sufficiently describe the concepts of confinement and removal for purposes of the kidnapping statute. Specifically, the defendant complains that the instruction does not mirror the language of the applicable case law contained in *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981).

Under *Rich,* "confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the [sexual abuse] offense." *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981). Following the precise language of Iowa Criminal Jury Instruction 1000.5, the trial court refused to insert the terms "significantly" or "substantially" into the submitted jury instruction.

■ The crux of Ripperger's complaint is that the jury was improperly instructed on the subject of whether the kidnapping in this case had significance apart from the sexual abuse allegation. In kidnapping cases in which there is an "underlying" offense, the confinement or removal necessary to sustain a conviction must be more than "incidental" to the commission of the underlying offense. *State v. Newman,* 326 N.W.2d 788, 791 (Iowa 1982); *State v. Knupp,* 310 N.W.2d 179, 183 (Iowa 1981); *State v. Tryon,* 431 N.W.2d 11, 14 (Iowa App.1988). In the present case, Ripperger argues the trial court's jury instruction inadequately conveyed this concept. We disagree.

■ The specific language about which the defendant complains reads:

In determining whether confinement or removal, or both, exists, you must consider whether:

1. The risk of harm to [the victim] was increased;

2. The risk of detection was reduced; and

3. Escape was made easier.

We conclude the trial court's jury instruction appropriately conveyed the law. The lan-

guage of Iowa Criminal Jury Instruction 1000.5, as a whole, cautioned the jury that the kidnapping charge must have independent significance. In *State v. Doss*, 355 N.W.2d 874 (Iowa 1984), the court stated:

"We disapprove Uniform Instructions reluctantly." *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981). Further, a trial court is not required to instruct in the language of requested instructions so long as the topic is covered by the court's own instructions. *State v. Horn*, 282 N.W.2d 717, 730 (Iowa 1979).

The definition of accomplice requested by [the defendant] may be clearer and more easily followed by a jury. That, however, is not the issue. The court's instructions covered the topic adequately and there was no error in refusing [the defendant's] proffered addition. *Id.*

*Id.* at 881.

### V. *Conclusion.*

In accordance with the above discussion, we affirm Ripperger's convictions. In doing so, we have also considered the defendant's contention that the district court abused its discretion in admitting statistical evidence in relation to the State's presentation of DNA fingerprinting evidence. We find this issue to be entirely without merit.

**AFFIRMED.**