MANSFIELD, Justice
(concurring in part and dissenting in part).
I concur in Part III of the majority opinion. However, I dissent from Part IV of the court’s opinion and believe the search should be upheld for the reasons set forth in my dissenting opinion in State v. Baldon, 829 N.W.2d 785, 835-36 (Iowa 2013) (Mansfield, J., dissenting). Accordingly, unlike the majority, I do not need to reach the community earetaking exception, the exigent-circumstances exception, the special-needs exception, or reasonable suspicion. All of these are potential alternative grounds for upholding the search of Kern’s home.
Having said that, I wholeheartedly endorse the majority’s discussion of the first two of these issues. In the course of a few pages, the majority carefully applies the relevant Iowa and United States Supreme Court precedents. It concludes that this case involves neither community caretak-ing nor exigent circumstances as defined in the easelaw. I agree with the majority’s treatment of these two matters.
Unfortunately, the majority’s discussion of special needs is missing the same focus and faithfulness to precedent. Just a decade ago, we applied that doctrine in rejecting a challenge to a search of a school locker under both the Fourth Amendment and article I, section 8. See State v. Jones, 666 N.W.2d 142, 145-50 & n. 2 (Iowa 2003). Thus, we have recognized special needs as an exception to the warrant requirement under the Iowa Constitution.
In a footnote, my colleagues downplay Jones because it “featured no independent analysis of the Iowa Constitution” and “was limited to an examination of what the United States Supreme Court had said on the subject.” I would categorically reject any suggestion that the worthiness of our state constitutional precedents depends on the extent to which they depart from federal constitutional precedent.
While the majority relegates Jones to a footnote, it devotes considerable attention to State v. Cullison, a case we decided over forty years ago under the Fourth Amendment, not article I, section 8. See 173 N.W.2d 533 (Iowa 1970). My colleagues mislabel Cullison as an “Iowa Supreme Court case[ ] dealing with searches of parolees and probationers under article I, section 8 of the Iowa Constitution.” In fact, the opinion contains no reference to that provision. Cullison, rather, was our court’s effort to determine the scope of “an Iowa State parolee’s Fourth Amendment rights, privileges- and immunities.” Id. at 537. We expressly noted the absence of any United States Supreme Court precedent on point. Id. at 535. Although Culli-son, as a 1970 Fourth Amendment precedent, has been superseded by later United States Supreme Court Fourth Amendment decisions, my colleagues try to reincarnate it as a decision on the meaning of Iowa’s search and seizure clause. See generally Baldon, 829 N.W.2d at 841 & n. 49 (fur *178 ther discussing why Cullison does not bear upon article I, section 8).
Not only is the majority’s survey of Iowa special-needs precedent historically inaccurate, its discussion is unnecessary and will introduce further uncertainty into Ioyva search and seizure law. One can hold under existing Fourth Amendment precedent that the special-needs doctrine does not apply because the search was strictly a law enforcement operation. It was conducted in the absence of a parole officer and was not in furtherance of a parole mission. See Ferguson v. City of Charleston, 532 U.S. 67, 79 & n. 15, 121 S.Ct. 1281, 1289 & n. 15, 149 L.Ed.2d 205, 217 & n. 15 (2001); Griffin v. Wisconsin, 483 U.S. 868, 873-74, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709, 717 (1987). If required to reach the special-needs exception, that would be my conclusion.
The majority’s discussion of reasonable suspicion is also a puzzler for me. The State’s position here is straightforward: Even if a warrantless, suspicionless search of a parolee is deemed impermissible under article I, section 8, a search based on reasonable suspicion should be allowed. This is a serious argument, and we expressly left it open in State v. Ochoa. See State v. Ochoa, 792 N.W.2d 260, 291 (Iowa 2010) (‘We have no occasion to consider other questions, such as ... whether individualized suspicion amounting to less than probable cause may be sufficient in some contexts to support a focused search.... ”). We also left it open in Baldon. See Baldon, 829 N.W.2d at 790-91, (majority opinion) (noting that the State made no argument “that a balancing test under article I, section 8 would weigh in favor of the State” and introduced no evidence of “any particular need ... to search Baldón ... predicated on individual suspicion”).
In six pages of its appellate brief in this case, the State argues clearly and succinctly that based on logic and precedent, reasonable suspicion should be a sufficient ground for searching a parolee. It also argues that reasonable suspicion was present here. The State uses the phrase “reasonable suspicion” nine times in the course of these six pages. Kern then replies to the State’s argument for four pages in her reply brief. She contends that reasonable suspicion to search the house did not exist.
Now, however, in a long footnote, my colleagues avoid the issue that the parties have presented to them. Instead, they recharacterize the State’s reasonable-suspicion argument as just a “second layer” of its - special-needs argument. This allows my colleagues not to address it. But it is a separate argument, and we said so in Ochoa. See 792 N.W.2d at 291 (identifying “(1) the potential application of special needs to searches of parolees conducted by parole officers ” and “(2) whether individualized suspicion amounting to less than probable cause may be sufficient in some contexts to support a focused search” as two questions not answered by the court’s opinion).
I would address the reasonable-suspicion issue by applying established Fourth Amendment precedent. In United States v. Knights, the United States Supreme Court held unanimously that reasonable suspicion was a sufficient basis to conduct a warrantless search of a probationer’s house. See 534 U.S. 112, 121, 122 S.Ct. 587, 592, 151 L.Ed.2d 497, 506 (2001). Knights is not a special-needs case; the search was conducted by a detective, with no involvement by anyone who was responsible for supervising the defendant’s probation. Id. at 115, 122 S.Ct. at 589, 151 L.Ed.2d at 503. Thus, Knights confirms that special needs and reasonable suspicion are two distinct possible grounds for *179 sustaining a search of a probationer (or by inference, a parolee). See id. at 117-18, 122 S.Ct. at 590-91, 151 L.Ed.2d at 504. However, Knights has no applicability when reasonable, suspicion did not exist.
Reasonable suspicion was not present here. At the time of the search of Kern’s home, the police had only the anonymous tip that marijuana was being grown and processed in the house, plus the occupants’ refusal to consent to a search. As noted by my colleagues, an anonymous tip without any indicia of reliability generally does not amount to reasonable suspicion. See Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254, 260-61 (2000) (holding that “the bare report of an unknown, unaccountable informant” did not amount to reasonable suspicion for a Terry stop); Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415-16, 110 L.Ed.2d 301, 308 (1990) (indicating that an anonymous tip standing alone would not normally provide reasonable suspicion for a Terry stop). And I also share my colleagues’ view that Kern’s and Grant’s refusals to consent to a search cannot provide a basis for a search. See State v. Maddox, 670 N.W.2d 168, 173 (Iowa 2003) (“[M]ere refusal to consent to a search does not establish probable cause.”); State v. Ripperger, 514 N.W.2d 740, 746 (Iowa Ct.App.1994) (“The defendant’s refusal to consent to a blood test cannot be used to support probable cause because such use denies the defendant’s Fourth and Fifth Amendment rights.”).
In summary, I agree with the majority’s determinations on sufficiency of the evidence. I would affirm the district court’s denial of Kern’s motion to suppress for reasons already stated in my Baldón dissent. Additionally, I agree with the majority’s handling of the community caretaking and exigent-circumstance exceptions, but disagree with its handling of the special-needs and reasonable-suspicion matters.
WATERMAN, J., joins this concurrence in part and dissent in part.