# IN THE COURT OF APPEALS OF IOWA

No. 15-1624
Filed September 28, 2016

**MICHAEL DONTE MOSS,**
    Applicant-Appellee,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


The State appeals the postconviction court's grant of postconviction relief

to Michael Donte Moss, following his conviction for first-degree murder.

**AFFIRMED.**


Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellant.

Kevin E. Hobbs, West Des Moines, for appellee.


Heard by Danilson, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

The State appeals the postconviction court's grant of postconviction relief (PCR) to Michael Donte Moss following his conviction for first-degree murder. The State argues the PCR court erred in vacating Moss's conviction and ordering a new trial on the ground Moss's trial counsel were ineffective in failing to object to the jury instruction on kidnapping, which served as an alternate theory for the underlying offense in the felony-murder charge. The State contends our prior decision finding substantial evidence existed to support a finding of guilt for felony murder by kidnapping is binding in this case. Alternatively, the State asserts Moss failed to show his trial counsel had a duty to object to the instruction based on the case law in existence at the time of trial and Moss failed to establish prejudice in light of the overwhelming evidence that Moss's confinement of the victim was more than incidental to the underlying assault. Upon our de novo review, we affirm.

I.     **Background Facts and Proceedings**

The following undisputed facts were set forth in our opinion on direct appeal:

> On July 21, 2008, Moss and his friend, Nick Harris, went to Oakridge apartments in search of Andrew Hughes, who allegedly owed Moss $200. The men located Hughes in an apartment known for drug activity. He appeared nervous to see Moss and stated he did not have the $200 he owed Moss on his person, but suggested they go to his bank to get the money.
> The three men went to the parking lot of the apartment complex where Hughes gave Moss the keys to his SUV after Moss stated, "I'm driving." The vehicle would not start with the key in the ignition, so Hughes had to hotwire the vehicle. Harris overheard Moss tell Hughes he had a gun. Moss also told Hughes if he did not have the money, he was going to beat Hughes up. Harris observed Hughes to be acting scared and nervous.

The men drove to First National Bank in Ankeny with Moss driving the vehicle, Harris sitting directly behind [Hughes] in the backseat, and Hughes sitting in the passenger side of the front seat across from Moss. They pulled into the drive-through lane and Moss sent Hughes's driver's license to the teller and asked her for the balance on Hughes's account. After Hughes nodded his assent, the teller informed Moss the balance was $4.50. Harris saw Moss give Hughes a furious look, although he said nothing. Appearing frightened, Hughes attempted to exit the vehicle and flee, but he got caught in the seatbelt.

With the passenger-side door partially open and Hughes entangled in the seatbelt, Moss began to speed away. Harris was shouting at Moss, "Let him out," but Moss continued driving at a high rate of speed. Harris could not see Hughes's location and asked Moss what happened to him, to which Moss replied, "I think he went under the car." During this time, Moss was repeatedly glancing at the side mirror located on the passenger side of the vehicle.

After a drive of approximately 1167 feet, Moss swerved the vehicle to the right and drove up over the curb. Hughes was dislodged from the seatbelt and left lying near the curb as Moss sped away. Although Hughes was still breathing and had a strong heart rate, his injuries were severe. He was declared brain dead two days later.

Moss drove the vehicle back to Des Moines where he abandoned it on Pennsylvania Avenue. He and Harris went their separate ways. Harris later went to the police and reported what had occurred.

*State v. Moss*, No. 10-0079, 2010 WL 5050561, at *1 (Iowa Ct. App. Dec. 8, 2010).

The State charged Moss with first-degree murder, in violation of Iowa Code sections 707.1 and 707.2 (2007). The case was tried to a jury on November 2–6, 2009. The State presented three alternative theories of murder in the first degree: premeditated murder and felony murder based on the predicate felonies of robbery and kidnapping. The jury returned a general verdict of guilty, which did not state which theory was adopted. The district court sentenced Moss to life in prison without the possibility of parole.

Moss appealed his conviction, claiming there was insufficient evidence to support his conviction under either of the felony-murder theories. He did not dispute sufficient evidence existed to support his conviction of premeditated murder. Our court affirmed Moss's conviction, concluding substantial evidence existed to support the jury's finding of guilt under both the kidnapping and the robbery felony-murder theories.

On July 19, 2011, Moss filed a pro se application for PCR asserting numerous claims, including his trial counsel were ineffective in failing to object to the kidnapping instruction because it did not include a definition of "confinement" or "removal." On June 23, 2014, Moss filed an amended pro se application, again claiming his trial counsel provided ineffective assistance in failing to object to the kidnapping jury instruction. On April 29, 2015, the PCR court held a hearing on Moss's amended application; however, neither side raised this argument at the hearing. Thus, although one of Moss's trial attorneys testified at the PCR hearing, she was not asked to explain any trial strategy she may have had in failing to object to the court's instruction or to seek an instruction on the elements of "confinement" and "removal."

On September 10, 2015, the PCR court granted Moss's application on the basis Moss's trial counsel were ineffective in failing to object to the jury instruction for kidnapping as a predicate felony to support the charge of first-degree murder because the instruction omitted the intensified tripartite test

established in *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981), and in failing to move for a new trial based upon this legal error.[1] The State appeals.

## II.    Scope and Standard of Review

PCR proceedings are generally reviewed for correction of errors at law. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016).  When, as here, the applicant raises an ineffective-assistance-of-counsel claim, we apply a de novo review.  *See id.*

## III.    Analysis

### A.    Law of the Case

The State argues our court's decision on direct appeal, finding substantial evidence of Moss's confinement of Hughes far exceeded the confinement inherent in the underlying felonious assault, was binding on the PCR court and, therefore, precluded the PCR court from granting Moss's requested relief.

Under the doctrine of law of the case, "an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case."  *Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) (quoting *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000)); *see also State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987)

---

[1] The PCR court further found Moss's appellate counsel provided ineffective assistance in failing to present an ineffective-assistance-of-trial-counsel claim based on these grounds.  An ineffective-assistance-of-trial-counsel claim "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes."  Iowa Code § 814.7(1) (2013); *see also State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("[W]e hold defendants are no longer required to raise ineffective-assistance claims on direct appeal, and when they choose to do so, they are not required to make any particular record in order to preserve the claim for postconviction relief.").  Thus, we need not determine whether Moss's appellate counsel rendered ineffective assistance in failing to raise Moss's ineffective-assistance-of-trial-counsel claim on direct appeal.

("[T]he legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and [appellate] court[s] in later appeals."). The doctrine stems from "a public policy against reopening matters which have already been decided." *Bahl*, 725 N.W.2d at 321. "[T]he [law-of-the-case] doctrine does not preclude consideration of issues that could have been, but were not, raised in the first appeal." *Grosvenor*, 402 N.W.2d at 405.

Moss did not raise the issue of the allegedly deficient kidnapping jury instruction prior to the filing of his PCR application. Thus, his claim had not already been decided by a court of review, and the PCR court did not err in considering the issue for the first time under the ineffective-assistance-of-counsel rubric in the proceeding below. *See id.*

### B.     Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, Moss must show by a preponderance of the evidence: "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) (quoting *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012)); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Under the first prong, 'we measure counsel's performance against the standard of a reasonably competent practitioner.'" *Thorndike*, 860 N.W.2d at 320 (quoting *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012)). "Under the second prong, [Moss] must establish that prejudice resulted from counsel's failure to perform an essential duty." *Id.* Failure to prove either prong is fatal to the claim. *See State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006). In examining Moss's claim, we

presume his trial attorneys performed their duties competently. *See Thorndike*, 860 N.W.2d at 320.

The State claims Moss failed to show his trial counsel breached an essential duty in failing to object to the trial court's instruction to the jury on kidnapping as the underlying offense in support of the felony-murder charge. The State further asserts Moss failed to establish prejudice in light of the overwhelming evidence that Moss's confinement of Hughes was more than incidental to the underlying assault.

In his amended PCR application, Moss specifically claimed his trial counsel rendered ineffective assistance in failing to object to the trial court's jury instruction that omitted the definition for "confinement" or "removal" necessary for kidnapping to serve as the predicate felony in his charge of felony murder.

Our supreme court has long held:

> [O]ur legislature, in enacting section 710.1 [(kidnapping defined)], intended the terms "confines" and "removes" to require more than the confinement or removal that is an inherent incident of commission of the crime of sexual abuse. Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. Such confinement or removal must be more than slight, inconsequential, or an incident inherent in the crime of sexual abuse so that it has a significance independent from sexual abuse. Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

*Rich*, 305 N.W.2d at 745. In subsequent cases, the supreme court applied the standards delineated in *Rich* to kidnapping in the context of the commission of other crimes. *See, e.g., State v. Misner*, 410 N.W.2d 216, 223 (Iowa 1987)

(affirming kidnapping conviction when inmates armed with shanks and knives captured and detained guards, forced officers to release a number of prisoners, and claimed guards were held "hostage" and demands would be forwarded).

In *State v. Doughty*, 359 N.W.2d 439, 441 (Iowa 1984), the trial court minimally instructed the jury on the definition of confinement:

> A person is "confined" when his freedom to move about is substantially restricted by force, threat or deception. He may be confined either in a place where the restriction commences or in a place to which he has been removed. The confinement need not exist for any particular length of time, as long as it is for the purpose of restricting the person's freedom to move about.

The supreme court held the defendant "was entitled to the submission of an instruction pointing out the removal or confinement necessary for first-degree kidnapping" and "[i]t was not enough . . . that the jurors could have inferred this from [the language above]." *Id.* Furthermore, in *State v. Ripperger*, 514 N.W.2d 740, 750–51 (Iowa Ct. App. 1994), our court concluded an instruction that included the *Rich* tripartite test[2]—without the intensifiers "substantially" and "significantly"—appropriately conveyed the law and cautioned the jury that the kidnapping charge must have independent significance apart from the underlying offense.

Here, the trial court instructed the jury on kidnapping as follows:

> A person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by the following, the intent to inflict serious injury upon such person.

---

[2] The standards announced in *Rich* have been repeatedly referred to in our case law as the "*Rich* tripartite test." *See, e.g.*, *State v. Robinson*, 859 N.W.2d 464, 475 (Iowa 2015).

The court's instruction to the jury did not include the standards established in *Rich* and followed in subsequent cases. From the instruction given, the jurors could not infer the confinement or removal that was necessary for kidnapping to serve as the underlying offense in support of the felony-murder charge. *See Doughty*, 359 N.W.2d at 441. Furthermore, we agree with the PCR court's assessment that no reasonable trial strategy is apparent from the record because a proper *Rich* instruction would only have intensified the State's burden of proof. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) ("Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel."). Thus, we conclude the trial court's instruction on kidnapping was erroneous.

Our supreme court has held that counsel's "failure to recognize an erroneous [jury] instruction and preserve error [by objecting to it] breaches an essential duty," supporting a claim of ineffective assistance. *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). Based on our de novo review of the record, we agree with the PCR court that Moss's trial counsel breached an essential duty in failing to object to the trial court's instruction on kidnapping, which served as an alternate predicate felony in support of the felony-murder charge.

We now turn to whether prejudice resulted from trial counsel's failure to perform an essential duty. Prejudice is the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ondayog*, 722 N.W.2d at 784 (quoting *Strickland*, 466 U.S. at 694). In the ineffective-assistance-of-

counsel context, "the instruction complained of [must be] of such a nature that the resulting conviction violate[s] due process." *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008) (alterations in original) (citation omitted). Whether a defendant can show prejudice in cases challenging jury instructions as erroneous largely depends on the facts and circumstances of the case. We must determine whether there is a reasonable probability the jury would have reached a different verdict assuming a jury instruction including the standards announced in *Rich* was properly given.

The PCR court determined Moss was prejudiced by his trial counsel's failure to object to the jury instruction in question because "the evidence [did not] clearly establish[] the prerequisites for confinement or removal independent of the underlying crime." The court found the evidence presented by the State "was less than overwhelming" and this was a close case that should have been submitted to a "properly instructed . . . jury to decide the question without speculation and conjecture." The PCR court reasoned:

> [A] jury could reasonably find that [Hughes] did not voluntarily accompany Moss to the bank; that Moss said, "I'm driving"; that Moss threatened to beat up [Hughes] and said he had a gun before they got to the bank; and that he had specific intent to commit serious injury by dragging [Hughes] 1167 feet from the bank's drive-up window. On the other hand, a properly instructed jury could reasonably find that [Hughes] suggested going to the bank; that [Hughes] gave Moss the keys and hotwired his own car; that Moss did not brandish a weapon; that Moss did not restrain [Hughes] within the car; that appearing in front of a drive-up teller at a bank that would typically have surveillance cameras did not substantially increase the risk of harm to [Hughes], significantly lessen the risk of detention, or significantly facilitate the risk of escape; and that Moss did not anticipate [Hughes]'s sudden attempt to bolt from the car. Thus, a properly instructed reasonable jury could have reasonably concluded that the State failed to prove beyond a reasonable doubt that the confinement or removal of

[Hughes] was not incidental to the assault and was substantially more heinous as to constitute kidnapping and murder.

(Footnote omitted.) The PCR court concluded its "confidence in the outcome is substantially undermined by the error in the trial court's jury instructions."

The State argues our court already considered the evidence in light of the standards set forth in *Rich* on direct appeal and ultimately concluded the evidence that Moss dragged Hughes for 1167 feet while Hughes was entangled in his seatbelt established confinement "far greater than the mere moments [in which] an assault would ordinarily take place" and was not "normally incidental to assault with intent to inflict serious injury." *Moss*, 2010 WL 5050561, at *5. The State urges us to conclude our earlier opinion is the law of the case and established that Moss was not prejudiced by his trial counsel's error in failing to object to the erroneous instruction.[3] However, the State neglects the crucial detail of the differing standards of review and burdens of proof at issue in this case on direct appeal and PCR. We will not substitute our judgment on direct appeal—when we found substantial evidence sufficient to convince the jury of Moss's guilt while viewing the record in the light most favorable to the State—for that of a more stringent standard in a new trial before a properly instructed jury,

---

[3] The State also argues the PCR court improperly relied on Justice Wiggins's special concurrence in *Robinson* because it was not the law in effect at the time of Moss's trial in 2009. *See Robinson*, 859 N.W.2d at 487–88 (Wiggins, J., concurring specially) (stating that the trial court's instruction on the confinement necessary for kidnapping—which did not include the *Rich* intensifiers "substantially" and "significantly"—would have been reversible error on direct appeal if counsel had objected). Justice Wiggins concluded he would have found the challenge to the instruction "was a claim worth raising" and counsel provided ineffective assistance in failing to object to the instruction. *See id.* at 492. We find Moss's claim on PCR that the instruction on kidnapping was erroneous because it did not instruct the jury on the confinement or removal necessary for kidnapping under the law in effect at the time of Moss's trial. *See Ripperger*, 514 N.W.2d at 751; *Misner*, 410 N.W.2d at 223; *Doughty*, 359 N.W.2d at 441; *Rich*, 305 N.W.2d at 745.

*see State v. Hensley*, 534 N.W.2d 379, 384 (Iowa 1995) (concluding sufficiency of the evidence is a lesser standard than overwhelming evidence), especially in such a close factual case when it is unclear on our de novo review of the record the point at which Moss's confinement or removal of Hughes began.

We conclude, although the jury could have found Moss's confinement and removal of Hughes was not merely incidental to the underlying assault, we cannot say the record contains overwhelming evidence to compel the jury to reach that result. *See Maxwell*, 743 N.W.2d at 197 (concluding trial counsel's failure to object to the court's erroneous jury instruction did not prejudice the defendant because overwhelming evidence existed to support the guilty verdict); *see also Boose v. State*, No. 13-1130, 2014 WL 7343218, at *3 (Iowa Ct. App. Dec. 24, 2014) (applying the "overwhelming evidence" standard cited in *Maxwell* to the applicant's ineffective-assistance-of-trial-counsel claim in a PCR action). Thus, under these circumstances, we cannot conclude Moss was not prejudiced by trial counsel's failure to object to the erroneous jury instruction.

## IV. Conclusion

Because trial counsels' failure to object to the trial court's kidnapping instruction, which served as an alternate theory for the underlying offense in the felony-murder charge, was deficient performance and resulted in prejudice to Moss, we affirm the postconviction court's ruling granting his PCR application. Moss is entitled to a new trial.

**AFFIRMED.**