# IN THE COURT OF APPEALS OF IOWA

No. 15-2183
Filed July 19, 2017

**DENIS GAILEY,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Webster County, William C. Ostlund, Judge.

Denis Gailey appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

Rockne O. Cole of Cole Law Firm, P.C., Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., Potterfield, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MAHAN, Senior Judge.**

Denis Gailey appeals the district court's denial of his application for postconviction relief following his 2008 convictions for two counts of kidnapping in the first degree, one count of arson in the second degree, and one count of burglary in the first degree. Upon our review, we affirm the court's order denying Gailey's application for postconviction relief.

**I.** **_Background Facts and Proceedings_**

In its ruling affirming Gailey's convictions on direct appeal, this court set forth the following facts surrounding the incident leading to Gailey's charges:

> The charges at issue in this case arose from a series of events that occurred on April 25, 2007. At the time, Gailey was under a protective order prohibiting contact with his wife, Dawn, and step-daughter, Jane Doe II. Dawn, accompanied by the police, went to the family home to retrieve some belongings. Inside they discovered diesel fuel poured throughout the home and several suicide notes apparently written by Gailey. Dawn went to the elementary school to pick up the couple's six-year-old daughter, Jane Doe I. After driving away from the school, Gailey appeared in a car and blocked Dawn's path with it. He approached the driver's side window of Dawn's van, pointed a gun at her, and told her to open up the door and that he was going to blow her head off. He showed her the bullet in the gun and told her he was not playing around. He then ordered Dawn to get out and pull his car over to the side of the road. Dawn complied, Gailey climbed into the back of the van with their daughter, and Dawn returned to the driver's seat. He then told Dawn to drive out to a farm. When Dawn asked him what he was doing he said that he was going to kill her, their daughter, and himself. He was yelling, swearing, and saying nonsensical things.
> During the drive, both Gailey and Dawn received calls on their cell phones. During one call, Gailey told his father that everything was his father's fault and had he not found Dawn and Jane Doe I, he would have killed his father and brothers. At the farm, he ordered Dawn to park the van behind a shed so they could not be seen and to shut off the headlights. He then stated that they "were going to relive some childhood memories," took the headrest off the driver's seat, pointed the gun at Dawn's head and asked "do you want it in the head or in the heart." When Dawn asked him not

to do it and urged that it was not the right thing to do and that there were other ways to handle the situation, Gailey got angry and told her to quit begging. Dawn kept talking to Gailey and was able to convince him not to kill them and that they could all leave town together. Gailey then made a call to retrieve some money he had asked a friend to hold for safekeeping.

They left the farm, exchanged the money in a parking lot, and began driving again, with Dawn driving and Gailey and Jane Doe I in the back seat. An officer began following them and a high speed chase ensued. Dawn suggested they stop but Gailey demanded otherwise. He then told her to stop but ordered her to back up toward the officer. She did this but stopped before hitting the officer. Gailey then climbed into the front seat and the chase continued at even higher speeds. Dawn convinced Gailey to throw the handgun out the window and shortly thereafter, the officers rammed the van into a ditch. Dawn picked up Jane Doe I and fled to an officer's vehicle.

Gailey was charged with multiple crimes, including two counts of first-degree kidnapping, and one count of first-degree burglary, and second-degree arson. At trial, the State introduced into evidence a tape recording Dawn made of a phone conversation she had with Gailey on April 21, 2007, several days before the alleged kidnapping. During the phone conversation Gailey made incriminating statements when Dawn confronted him about whether he sexually abused Dawn's daughter from a previous relationship and his step-daughter, Jane Doe II. The court admitted the taped conversation and a transcript of the recording over the defense's objection. Following a jury trial, Gailey was convicted on all counts[.[1]]

*State v. Gailey*, No. 08-0628, 2009 WL 778772, at *1-2 (Iowa Ct. App. Mar. 26, 2009).

This court affirmed Gailey's convictions, rejecting his challenges to the sufficiency of the evidence to support his kidnapping conviction and the district court's consideration of improper sentencing factors. *Id.* at *2-3, *5-6. The court preserved Gailey's claim of ineffective assistance of counsel on two evidentiary

---

[1] Gailey later pled guilty to additional charges of two counts of sexual abuse in the third degree, possession of a firearm as a felon and habitual offender, and eluding law enforcement while committing a felony as a habitual offender.

issues regarding his taped phone conversations with Dawn discussing his prior sexual abuse of his step-daughter. *Id.* at *4.

Gailey filed an application for postconviction relief (PCR), contending his trial counsel was ineffective in failing to preserve error on his evidentiary claims. Gailey later filed an amended PCR application through counsel, claiming trial counsel was ineffective in failing to object to various jury instructions. Following a hearing, the PCR court entered an order denying Gailey's claims.

Gailey appeals. Facts specific to his claims on appeal will be set forth below.

## II. Standard of Review

We typically review the district court's ruling on an application for postconviction relief for correction of errors. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). However, we conduct a de novo review of PCR claims of ineffective assistance of counsel because they assert constitutional infirmities. *Id.*

## III. Discussion

To prevail on a claim of ineffective assistance of counsel, Gailey must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim of ineffective assistance of counsel fails if either element is lacking. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012).

*A.      Confinement or Removal Element*

Gailey contends his trial counsel was ineffective in failing to object to the kidnapping marshalling instruction as not containing the "intensifiers" required by Iowa case law.  According to Gailey, the court's instruction "resulted in a less demanding standard to prove the confinement or removal element of first-degree kidnapping."  The challenged instruction provided:

> A person is "confined" when her freedom to move about is substantially restricted by force, threat or deception.  The person may be confined either in the place where the restriction began or in a place to which she has been removed.
> No minimum time of confinement or distance of removal is required.  It must be more than slight.
> In determining whether confinement exists, you may consider whether:
> 1. The risk of harm to Dawn Gailey and [Jane Doe I] was increased.
> 2. The risk of detection was reduced.
> 3. Escape was made easier.
> An intent to secretly confine means more than restricting the movement of a victim.  It means an intent to conceal or hide a victim or prevent her discovery.

Gailey claims the instruction should have included language requiring the jury to find the risk of harm was "substantially" increased, the risk of detection was "significantly" reduced, and escape was made "significantly" easier.[2]  *See State v. Robinson*, 859 N.W.2d 464, 481 (Iowa 2015) (observing the question in reviewing a kidnapping conviction is "whether, on the totality of the circumstances, the State offered sufficient evidence that a jury could find beyond a reasonable doubt that the defendant's confinement of the victim *substantially*

---

[2] The instruction tracked the uniform Iowa Criminal Jury Instruction 1000.5 (2012), promulgated by a committee of the Iowa State Bar Association and approved by this court in *State v. Ripperger*, 514 N.W.2d 740, 750 (Iowa Ct. App. 1994) (affirming the same instruction upon concluding it "appropriately conveyed the law" and complied with the uniform instruction).

increased the risk of harm, *significantly* lessened the risk of detection, or *significantly* facilitated escape"); *State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981) (creating the "*Rich* tripartite test," as applied in *Robinson*); *see also Ripperger*, 514 N.W.2d at 750 ("In kidnapping cases in which there is an 'underlying' offense, the confinement or removal necessary to sustain a conviction must be more than 'incidental' to the commission of the underlying offense.").

Even assuming Gailey's trial counsel had a duty to object to the confinement instruction without the intensifiers,[3] we cannot find Gailey suffered prejudice as a result of his counsel's omission. *See Clay*, 824 N.W.2d at 501 n.2 ("The court always has the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently."). Under these facts and circumstances, we conclude there is no reasonable probability the addition of the "intensifier" language in the marshalling instruction would have changed the outcome of Gailey's case. *See State v. Braggs*, 784 N.W.2d 31, 34 (Iowa 2010) (setting forth the standard to establish prejudice—a reasonable probability that but for his counsel's alleged deficiencies, the result of the proceedings would have been different). The jury was presented with evidence that Gailey's conduct substantially increased the victims' risk of harm and significantly lessened his risk of detection—Gailey told the victims he was going to kill them and himself, and admitted he poured fuel throughout the family

---

[3] The *Robinson* court's special concurrence observed, "Even a cursory review of our caselaw would have revealed we repeatedly emphasized the risk of harm must be substantial and the lessened detection and ease of escape must be significant." 859 N.W.2d at 492 (Wiggins, J., concurring specially). The special concurrence stated reasonably competent counsel would have considered the claim regarding the confinement instruction to be "worth raising." *Id.* Iowa Criminal Jury Instruction 1000.5 was modified in 2015 to reflect the intensifier language. *See State v. Ronnau*, No. 14-0787, 2016 WL 3511314, at *10 n.7 (Iowa Ct. App. Jan. 27, 2016).

home, and he forced them to endure a terrifying ride to a secluded area at gun-point followed by a high-speed chase with law enforcement. *See Gailey*, 2009 WL 778772, at *1-2; *see also Ronnau*, 2016 WL 3511314, at *10 ("Based on the overwhelming evidence that Ronnau confined and removed A.M. from the west side of Iowa Street to the east side of Iowa Street, without her consent, and intentionally subjected her to sexual abuse or serious injury, we find no reasonable probability of a different outcome had counsel objected to the uniform jury instruction.").

Because Gailey has not established the necessary prejudice to succeed on his ineffective-assistance-of-counsel claim, we affirm on this issue. *See Dempsey v. State*, 860 N.W.2d 860, 862 (Iowa 2015) ("Reversal is warranted only where a claimant makes a showing of both elements.").

B.    *Serious Injury Element*

Gailey next contends his trial counsel was ineffective in failing to object to the inclusion of an intent-to-commit-serious-injury element in the kidnapping instructions.[4] According to Gailey, "[t]he record does not adequately support that element"; rather, "[t]he record reflects [he] intended to coerce Dawn to go back to the farm so that they could exchange money."

Upon our review, we conclude Gailey's contention is unsupported by the record; at a minimum, the jury was presented evidence that Gailey pointed a gun at Dawn's head multiple times and threatened to kill Dawn and Jane Doe I. The

---

[4] Specifically, the jury was instructed that to convict Gailey of kidnapping in first degree, the jury must find he removed or confined the victims with the specific intent to either "(a) inflict serious injury upon [them], or (b) secretly confine [them]."

jury could have concluded Gailey intended to seriously injure his victims.[5] "[C]ounsel has no duty to raise an issue that has no merit." *State v. Griffin*, 691 N.W.2d 734, 737 (Iowa 2005).

### C. Evidentiary Objections

Gailey also claims his trial counsel was ineffective in failing to adequately object to evidence involving a "separate crime" and a "different victim." In the challenged evidence—taped phone conversations between Gailey and Dawn— Dawn accused Gailey of sexually abusing Jane Doe II. At the beginning of the conversation, Dawn stated, "And [Jane Doe II] told us that she has had to . . . has been having sex with you," and continued, "That you made her have sex to be able to do things." Gailey admitted to the sexual abuse, conceding that "it happened," but blamed Jane Doe II and his own father in addition to himself, and Gailey made several references to suicide, talked about needing a gun, and stated he was going to "get rid" of the family home and its "bad history."

Gailey contends the conversations with Dawn were inadmissible as hearsay and as prior bad acts under Iowa Rule of Evidence 5.404(b). *See* Iowa Rs. Evid. 5.801(c); 5.802, 5.404(b). Trial counsel objected to the admission of the challenged evidence as follows:

> Yes, Your Honor, I would object. No foundation, hearsay, confrontation rights, the prejudicial effect outweighs the probative value, the probative value is substantially outweighed by the danger of unfair prejudice to my client, and irrelevant. Now there are parts on the tape that may be relevant, there are parts that aren't relevant and there's clear hearsay involving the alleged statements out of persons that have not testified in this case, and therefore, which no exception to the hearsay rule has been established.

---

[5] We further conclude Gailey's challenge to the failure to define the term "serious injury" in the context of these facts is unpersuasive.

This court concluded counsel's objection "was not sufficient to preserve error" on either Gailey's hearsay or prior-bad-acts objection. *See Gailey*, 2009 WL 778772, at *4. Gailey contends he was prejudiced by counsel's failure to raise adequate objections because the evidence would have been excluded had counsel done so, and "this was not an isolated piece of evidence, but rather a detailed and extensive phone call containing extensive evidence of the abuse." For the following reasons, we disagree.

Hearsay is not admissible unless it is admitted as an exception or exclusion under the hearsay rule or some other provision. Iowa R. Evid. 5.802; *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). "Testimony is not hearsay if it is 'received as relevant circumstantial evidence reasonably necessary to complete the whole story of the crime charged.'" *State v. Summage*, 532 N.W.2d 485, 488 (Iowa Ct. App. 1995) (quoting *State v. Leonard*, 243 N.W.2d 887, 890 (Iowa 1976)). "This type of evidence is not hearsay because it is not used to prove the truth asserted; the evidence is received without reference to truth or falsity in it." *Id.*

Here, the statements at issue completed the picture of the crime charged; Dawn's statements to Gailey were the trigger for the no-contact order and led to Gailey's "downward spiral" over the next four days. The statements were not admitted to prove Gailey sexually abused Jane Doe II; rather, the statements were relevant to explain Gailey's motive and intent to set out the sequence of events, culminating in the charged crimes. Moreover, even if Jane Doe II's statements should have been excluded, Gailey's own statements on the same

subject would have been properly admitted; accordingly, the evidence was "merely cumulative and therefore not prejudicial." *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("[W]e will not find prejudice if the admitted hearsay is merely cumulative. All of the information contained in A.E.'s parents' testimony was repeated either by the social workers or in the testimony of A.E. herself. Therefore, we find that the testimony of A.E.'s parents was merely cumulative and therefore not prejudicial." (citation omitted)); *State v. Bayles*, 551 N.W.2d 600, 606 (Iowa 1996) (noting the defendant "provided evidence of his other crimes" and admissions of a party opponent are not hearsay statements). We affirm on this issue.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Iowa R. Evid. 5.404(b); *State v. Cox*, 781 N.W.2d 757, 760 (Iowa 2010). In other words, such evidence "is not admissible to demonstrate the defendant has a criminal disposition and was thus more likely to have committed the crime in question." *State v. Reynolds*, 765 N.W.2d 283, 289 (Iowa 2009) *abrogated on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). "However, prior bad acts are admissible if offered for the purpose of establishing 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Cox*, 781 N.W.2d at 760 (quoting Iowa R. Evid. 5.404(b)).

Here, as set forth above, the conversation between Gailey and Dawn days before the charged crime was relevant to demonstrate Gailey's motive and

intent.[6]   And the evidence was not unfairly prejudicial considering its high probative value.  *See Bayles*, 551 N.W.2d at 607 (noting if the court "determines other-crime evidence is relevant, it must then decide whether its probative value is substantially outweighed by the danger of unfair prejudice").  Considering the facts and circumstances of this case, it is highly unlikely the jury would have convicted Gailey solely on the basis of the challenged evidence.  We also note the jury was given a cautionary instruction limiting the use of the evidence, which "help[ed] to nullify the danger of unfair prejudice."  *See id*. at 608.

## IV.    *Conclusion*

Upon consideration of the issues raised on appeal, we affirm the district court's denial of Gailey's PCR application.

**AFFIRMED.**

Danilson, Chief Judge, concurs; Potterfield, Judge, concurs specially.

---

[6] The PCR court predicted "even if trial counsel had made his objection the way that applicant suggests, the trial court would have ruled in the same manner and admitted the recordings."  The PCR court observed Gailey's trial counsel had objected to the tapes as being covered by the marital privilege, and the district court ruled to allow the evidence, stating:

> I listened to the tapes and obviously the bulk of the tape recording probably deals more with an allegation against this defendant for sexual abuse, which I'm aware of the fact that that would be something that would be taken up a later time, a different charge, not here, but it also . . . contains information that *I think is relevant to perhaps motive, intent, perhaps ways of doing something in this particular case*.

(Emphasis added.)

**POTTERFIELD, Judge.** (concurring specially)

I write separately because I disagree with the majority's finding that counsel did not beach an essential duty by failing to raise an effective objection to the evidence of sexual abuse of a child. That evidence was the subject of severed charges, was not necessary to the completion of the picture of the crime of kidnapping, and, while relevant to motive, was unfairly prejudicial. *See State v. Nelson*, 791 N.W.2d 414, 420, 423 (Iowa 2010) (defining inextricably intertwined evidence as "evidence of the surrounding circumstances of the crime in a causal, temporal, or spatial sense, incidentally revealing additional, but uncharged, criminal activity" and explaining how although such evidence "bypasses" Iowa Rule of Evidence 5.404(b), it is only admissible "to complete the story of the charged crime when a court cannot sever this evidence from the narrative of the charged crime without leaving the narrative unintelligible, incomprehensible, confusing, or misleading"); *see also McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000) (defining unfair prejudice as "the 'undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one'" (citation omitted)). Few subjects are more prejudicial than evidence of sexual abuse of a child. *See, e.g.*, *State v. Castaneda*, 621 N.W.2d 435, 441 (Iowa 2001) ("Obviously [the witness's] testimony [about a sex act]—which was in the context of children—would arouse a jury's sense of horror and would provoke its instinct to punish . . . .").

The majority assumes Gailey's admission in the taped conversation to the sexual abuse would have been properly admitted, making the remaining evidence cumulative. But an objection based on Iowa Rule of Evidence 5.404(b)

would have reached Gailey's statements as well. Counsel's failure to object fell below the level of competence required of counsel. *See Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (noting there is a point when even "tactical or strategical decisions made by counsel from a host of competing options falls outside the broad scope of a reasonably competent attorney").

I agree with the district court judge that the admissible evidence against Gailey was overwhelming to the extent he is unable to show the outcome of his trial would have been different without the sexual abuse evidence. *See State v. Parker*, 747 N.W.2d 196, 211 (Iowa 2008) (rejecting defendant's claim of ineffective assistance because the defendant could not establish prejudice, where evidence properly in the record provided overwhelming evidence of defendant's guilt). I concur in the result.