# IN THE SUPREME COURT OF IOWA

No. 22–0162

Submitted October 10, 2023—Filed February 16, 2024

**STATE OF IOWA,**

    Appellant,

vs.

**JESSE JON HARBACH,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Delaware County, Monica Zrinyi Ackley, Judge.

A criminal defendant seeks further review of the court of appeals decision reversing the district court's suppression of evidence following a *Franks v. Delaware* hearing. **COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which Christensen, C.J., McDonald, and May, JJ., joined. Waterman, J., filed a dissenting opinion, in which Mansfield and McDermott, JJ., joined.

Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellant.

Martha Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellee.

**OXLEY, Justice.**

The law favors warrants. And when a neutral judge issues a warrant based on an officer's sworn affidavit detailing facts that support probable cause, that affidavit is presumed to be true. Therefore, a defendant seeking to exclude facts included in a warrant application as untrue must not only show the facts to be false but must also show that the false statements were either included (1) intentionally to mislead the issuing judge, or (2) with reckless disregard for whether they would be misleading.

In this case, an officer investigating a one-vehicle rollover accident sought a warrant for a blood draw from the driver, who was taken to the hospital. The warrant was granted, and the subsequent blood draw revealed methamphetamine but no alcohol. The driver moved to suppress evidence from the blood draw, which the district court granted. The district court relied on the officer's bodycam video to conclude that the officer lied when he claimed he could smell alcohol on the defendant and that the defendant's eyes were blurry and his speech slurred. Excising those statements from the warrant application under *Franks v. Delaware*, *see* 438 U.S. 154, 155–56 (1978), the district court concluded the remaining statements about the accident were insufficient to establish probable cause to issue a warrant and granted the motion to suppress. But a bodycam video is not a de novo review for probable cause based on everything the officer knows. The *Franks v. Delaware* standard sets a high bar for concluding that an officer intentionally or recklessly included false information in an affidavit to support reconsidering whether the neutral magistrate reviewing the warrant application properly issued the warrant. And when intentionally false statements are properly excised under the *Franks* standard, the reviewing court is limited to reviewing the remaining facts included

in the warrant application to determine whether the warrant was supported by probable cause.

Applying the proper standard, we conclude the warrant affidavit established probable cause to support the warrant, and we reverse the district court's order suppressing the evidence.

**I. Background.**

Around 5:30 p.m. on May 21, 2021, Jesse Harbach was driving near Delhi, Iowa, when he was thrown from his truck in a one-vehicle rollover accident. When Deputy Mitch Knipper arrived on the scene, Harbach was lying on a backboard receiving medical treatment. Knipper questioned Harbach about the accident and whether he had been drinking. Based on his observations, Knipper applied for a warrant to obtain "[a] blood, urine, and/or breath specimen from" Harbach. A judge granted the warrant application for a blood draw.

Harbach was taken to Manchester Regional Medical Center, where he was originally treated. Deputy Knipper informed the Manchester medical center of the warrant, but a blood draw was not taken at that time because Harbach was "uncooperative and resistant," and medical personnel warned of additional internal injuries if they continued their attempt to take the blood draw. Harbach was then airlifted to St. Luke's Hospital in Cedar Rapids.

Knipper applied for a second search warrant directed to St. Luke's Hospital. The accompanying affidavit described the one-vehicle rollover accident as occurring at 5:30 p.m. on a May afternoon: "There were skid marks from the defendant's vehicle approaching the intersection, and skid marks around the corner of the intersection. The vehicle then entered the ditch and rolled at least one time, landing on its top." Knipper also checked boxes on the preprinted form, identifying the following observations of impairment and results of field sobriety tests:

```
Time observations began: 1745

X       Bloodshot eyes
X       Watery eyes
X       Slurred speech
X       Mumbling speech
X       Smell of alcoholic beverage coming from Suspect's person
_____   Unsteady gait / unsteady balance
_____   Open containers observed at scene
_____   Emotions visibly excited
_____   Judgment impaired
_____   Reason or mental ability affected
_____   Soiled clothing
_____   Other observations of impairment:

_____   Suspect is currently unconscious or otherwise unable to consent.

Standardized Field Sobriety Tests (Please indicate score, refusal, or inability)

        Test                            Score / Refusal / Inability
_____   Horizontal gaze nystagmus       REFUSED
_____   Walk and Turn                   INABILITY
_____   One leg stand                   INABILITY
_____   Preliminary breath test results  REFUSED
_____   Admission to drinking
_____   Other:  Suspect refused to answer any questions.
```

Based on this application, a second warrant was issued, and a blood draw was taken from Harbach at St. Luke's Hospital in Cedar Rapids approximately three hours after the accident. The blood sample was sent to the Department of Criminal Investigation (DCI) lab. The DCI report identified 634 NG/ML of methamphetamine in Harbach's blood but no alcohol. Harbach was subsequently charged with operating while intoxicated in violation of Iowa Code § 321J.2 (2021).

Harbach filed a motion to suppress evidence obtained from the blood draw, which asserted the deputy's application was based only on his claims that he smelled alcohol and observed Harbach with bloodshot eyes and slurred speech. Noting that the DCI test results of the blood draw reported no alcohol, Harbach argued that Knipper's allegation that he smelled alcohol was false, leaving inadequate facts to support issuing the warrant. In response, the State argued that Harbach could not establish that the deputy intentionally made false

statements or that a material statement made by the deputy was "false, whether intentional or not," quoting *State v. Groff*, 323 N.W.2d 204, 207 (Iowa 1982).[1]

The district court held a suppression hearing on January 4, 2022. At the hearing, Deputy Knipper testified about his observations at the scene of the accident and his statements in the search warrant application. Knipper testified that Harbach was receiving medical treatment near the wrecked vehicle when he arrived at the scene. Knipper briefly spoke with Harbach, who confirmed he was the only person in the vehicle. Harbach mentioned he had an issue with his brakes, and he thought the truck had rolled on top of him. Knipper spoke with Harbach a second time while he was receiving medical treatment in the back of an ambulance. Knipper asked Harbach if he had been drinking, but, according to Knipper, "he was not very forthcoming with any answers." Knipper testified that he could only smell gasoline near the accident scene, but inside the ambulance, he observed that Harbach "had watery, bloodshot eyes, his speech was somewhat, somewhat mumbled and slurred, and I detected the odor of alcoholic beverages coming from his person."

Knipper's bodycam video was admitted into evidence and viewed by the district court during the suppression hearing. The video showed that when Knipper arrived at the scene, Harbach was already strapped to a backboard, receiving medical treatment, and wearing a neck brace. Harbach had visible injuries to his face and was in obvious pain anytime he was moved. Paramedics and nearby witnesses told Deputy Knipper that Harbach had swerved to avoid an Amish buggy. Witnesses stated that they heard tires squealing and saw an Amish buggy in the road but that the buggy driver had left the scene. Knipper

---

[1]This is a misstatement of the law. The State's resistance quoted a part of *Groff* discussing *State v. Boyd*, which, as discussed below, we overruled in *Groff*. *See* 323 N.W.2d at 208 (overruling *State v. Boyd*, 224 N.W.2d 609, 616 (Iowa 1974)).

can be heard on the video telling two other officers that he could only smell gasoline by the scene but that he's "gonna guess it's a 55."[2]

Knipper followed as paramedics moved Harbach to the back of an ambulance. Knipper can be heard on the bodycam video asking Harbach his date of birth and where he was driving from. Harbach provided his birthdate but then responded, "I can't talk right now. It hurts to talk." One of the medical personnel asked Knipper to move because he was in the way of Harbach's treatment. Knipper left the ambulance briefly, but then he re-entered and asked Harbach again where he had been coming from. In response to being asked a second time, Harbach shook his head and told a paramedic: "Tell this guy to quit questioning me; it hurts." Knipper asked Harbach if he had anything to drink that day. Harbach did not immediately answer but eventually responded that he did not.

The State also offered into evidence a medical report from the Manchester medical center showing an ethanol level of "42."

| Serum Toxicology | LATEST RESULTS | | |
|---|---|---|---|
| Ethanol Level | 05/21/21 18:30 | 42 | High |

That report was not sent to DCI, and Knipper testified that he did not know what the ethanol level meant or whether it translated to blood alcohol content level. The State argued it translated to a .042 BAC reading.

Relying on its review of the bodycam video, the district court concluded that Harbach's speech was not slurred and he did not have bloodshot or watery eyes. The court also took issue with Knipper's statement in the affidavit that he smelled alcohol on Harbach, concluding, "It is unclear what [Knipper] could

---

[2]The parties do not dispute that "55" is a reference to a suspected drunk driver. *See* Ass'n of Pub. Commc'ns Officers, *Official Ten Code List,* http://www.njsoa.org/pdfs/tencode.pdf [https://perma.cc/ZXC3-SLMP].

smell in the ambulance given all the medical supplies contained inside and the equipment being used on the Defendant." Noting that the St. Luke's blood draw did not show any alcohol in Harbach's system, the district court surmised: "It begs the question then, how could one smell what is not present?" After extracting the "offensive statements" from the warrant application, the district court concluded that the remaining content proved only an accident, not Knipper's assumption that the defendant had been drinking. Where bystanders told Knipper they heard squealing tires and saw the Amish buggy but "[t]here was no indicia of drinking about the person of the Defendant," probable cause was lacking to support the warrant for a blood draw. As a result, the district court granted Harbach's motion to suppress and struck the evidence gathered pursuant to the warrant.

The State sought discretionary review of the district court's suppression order. We granted the application and transferred the case to the court of appeals. On its de novo review, the court of appeals determined the only statement that was shown to be intentionally false or misleading was Knipper's assertion on the preprinted form that Harbach refused the preliminary breath test and horizontal gaze nystagmus (HGN) test. Setting those facts aside, the court of appeals concluded that the remaining content established probable cause for issuance of the warrant and reversed the district court's suppression order.

We granted Harbach's application for further review to determine whether the district court properly applied the *Franks v. Delaware* standard for reviewing a warrant affidavit.

## II. Analysis.

A search warrant may issue only upon a showing of probable cause. *See* U.S. Const. amend. IV; Iowa Const. art. I, sec. 8. We review suppression rulings

raising constitutional questions de novo. *State v. Bracy*, 971 N.W.2d 563, 567 (Iowa 2022). "However, we do not make an independent determination of probable cause . . . ." *Id.* (quoting *State v.McNeal*, 867 N.W.2d 91, 99 (Iowa 2015)). When a defendant challenges a warrant as lacking probable cause, "we review the information actually presented to the judge and determine whether the issuing judge had a substantial basis for concluding that probable cause existed." *State v. Baker*, 925 N.W.2d 602, 613 (Iowa 2019); *see also Bracy*, 971 N.W.2d at 564 (describing our standard of review as deferential).

The general procedure for obtaining a search warrant is as follows: an officer submits a sworn affidavit providing a recitation of facts to the court, and a judge determines whether those facts establish probable cause to issue a search warrant. The affidavit's purpose is "to provide a neutral and detached magistrate with objective facts upon which [s]he can make an independent determination of probable cause." *Groff*, 323 N.W.2d at 210. From the information provided in the affidavit, the issuing court makes a "practical, common-sense" determination of whether it would convince a person of reasonable prudence that evidence of a crime could be located at the place to be searched. *Baker*, 925 N.W.2d at 613 (quoting *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997)).

A defendant can challenge a warrant by claiming the facts recited in the affidavit do not establish probable cause that the search will reveal evidence of a crime. *See Bracy*, 971 N.W.2d at 568. When a defendant has reason to believe the warrant application contains false or misleading statements, he can also challenge the warrant by challenging the veracity of the application. *See Franks*, 438 U.S. at 155–56; *Baker*, 925 N.W.2d at 614; *Groff*, 323 N.W.2d at 209.

Affidavits included in search warrant applications are presumed to be true. *Groff*, 323 N.W.2d at 209. To overcome that presumption, a defendant

challenging the veracity of a warrant application must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56; *see also Baker*, 925 N.W.2d at 614 (noting the preliminary showing must generally be made under oath). If that preliminary showing is made, the court holds a hearing—referred to as a "*Franks* hearing"— where evidence may be presented to show whether the statements are knowingly or recklessly false. *Franks*, 438 U.S. at 155–56. A defendant may also challenge the warrant application as intentionally omitting material facts that, if included, would cast doubt on the existence of probable cause. *State v. Green*, 540 N.W.2d 649, 656 (Iowa 1995).

If the court finds that any misstatements or material omissions were made either intentionally or with reckless disregard for the truth, the false statements are excised, the omitted statements are added, and the affidavit's remaining content is examined to determine whether it establishes probable cause to support issuing the search warrant. *Id.* Although we apply a preponderance of the evidence standard to determine whether the defendant has shown the officer intentionally or recklessly included false statements, *see Groff*, 323 N.W.2d at 206–07 (adopting the *Franks* standard, which applied a preponderance of the evidence standard), "[a] showing of deliberate or reckless falsehood is 'not lightly met,' " *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010) (quoting *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987)). We adopted the *Franks* standard for testing claims of veracity in search warrant affidavits in *State v. Groff*, where we overruled our precedent that allowed a warrant based on materially false statements to be invalidated even when the misstatements were a product of a good faith or innocent mistake. *See* 323 N.W.2d at 208 (overruling *State v. Boyd*, 224 N.W.2d 609, 616 (Iowa 1974)). We adopted the *Franks*

standard because it "more properly promotes the deterrence function of the rule by permitting veracity challenges only to those false statements that were tendered in bad faith by the affiant." *Id.* Thus, "excision . . . should occur only in the situation described in *Franks v. Delaware*: when statements in the warrant application were intentionally or recklessly false." *Bracy*, 971 N.W.2d at 565.

**A. District Court Proceedings and Analysis.** In his motion to suppress, Harbach alleged that the affidavit "contained a false allegation that the Deputy smelled alcohol, when the test results ultimately showed that there was no alcohol in the blood." He made no allegation—and offered no proof—of deliberate falsehood or reckless disregard for the truth of the statements that would entitle him to a hearing. *See Groff*, 323 N.W.2d at 209 (describing the preliminary showing required to mandate an evidentiary hearing). Although the State waived any procedural challenges by not objecting to the lack of a preliminary showing, it did challenge whether any purportedly false statements contained in the affidavit were made intentionally or with reckless disregard for the truth. Therefore, the ultimate veracity issue was not waived by the State.

Upon concluding the warrant contained "false statements," the district court proceeded to analyze whether the affidavit supported probable cause without the false statements. The district court found that Deputy Knipper "made an assumption as to the reason for the accident" and that his "attitude adjusted to conclude the Defendant was drinking" when he learned the defendant's identity. But these findings do not indicate whether the challenged statements were intentionally or recklessly false. The district court erred by excising any statements it concluded were false without first finding that they were made recklessly or intentionally. The district court's analysis seemingly applied the more relaxed standard under *State v. Boyd* that we overruled in *Groff* when we adopted the *Franks* framework. *See Groff*, 323 N.W.2d at 208. We apply

the correct legal standard to determine whether any statements in the application were in fact false, and if so, whether they were made with an intent to mislead or with reckless disregard for the truth. *See State v. Seager*, 341 N.W.2d 420, 425 (Iowa 1983) (recognizing that the district court applied the *Boyd* standard and moving on to apply *Groff* on appeal).

**B. Deliberate or Recklessly False Statements.** In challenging the veracity of a warrant application, the defendant must identify the specific portions of the affidavit claimed to be false. *Groff*, 323 N.W.2d at 209. In his motion to suppress, Harbach argued that Knipper's statement in the affidavit that he observed the smell of alcohol was false. Additionally, he argued that Knipper's observations of bloodshot and watery eyes were a result of his injuries, not intoxication, which made Knipper's omission of Harbach's condition from the accident a material misrepresentation that casts doubt on the existence of probable cause.

Because the statement must be both (1) false within the meaning of *Franks* and (2) made with intent or reckless disregard for the truth, we often address the issues together. Even if a statement is shown to be false, it will only be excised from the affidavit if made intentionally or with reckless disregard for the truth. *See, e.g., id.* at 210–12 (concluding that even if an affidavit included a statement that the defendant owned—rather than farmed—a field where plants appearing to be marijuana were grown, the statement could not be excised where the evidence established only that the officer was negligent in not verifying certain information included in a warrant application). We consider each of the statements Harbach claims to be false.

1. *Smell of alcohol coming from Harbach.* Harbach argues that the toxicology report showing no alcohol in his blood proves that Knipper lied about smelling alcohol on Harbach in the ambulance. The district court agreed,

surmising, "[H]ow could one smell what is not present?" As an initial matter, we reject the State's argument, premised on Justice Stevens's dissent in *Illinois v. Gates*, *see* 462 U.S. 213, 293 (1983) (Stevens, J., dissenting) (explaining that "subsequent events may [not] be considered in evaluating the warrant"), that the district court should not have considered matters outside the application when determining the search warrant's validity. There is a difference between the analysis for determining whether probable cause supported the warrant (which is limited to the facts before the issuing judge) and the analysis for determining the truthfulness of statements in a warrant application. *See Green*, 540 N.W.2d at 657 ("[I]n determining whether misrepresentation was intentional or material the surrounding facts are relevant and may be considered." (quoting *State v. Paterno*, 309 N.W.2d 420, 424 (Iowa 1981))). Thus, the district court properly considered the results of Harbach's blood draw in determining whether Knipper's statement that he smelled alcohol was false.

The district court found that Knipper "made an assumption as to the reason for the accident," and from that observation, it concluded that Knipper must have lied about smelling alcohol: "When he found out who the driver was, the deputy's attitude adjusted to conclude [Harbach] was drinking." Even so, it is an officer's job to investigate an accident scene, which may include probing into any suspicions arising from their prior history with an individual. Deputy Knipper's suspicion that Harbach was drinking based on his prior experience with Harbach alone would not have provided probable cause to support a warrant. But that prior knowledge did alert Knipper to look for signs of intoxication, which would have included ascertaining whether Harbach smelled of alcohol. That his suspicions were heightened once he learned Harbach's identity does not support the conclusion that Knipper falsified statements in the affidavit.

The district court relied on the blood draw results to determine that Knipper lied about smelling alcohol. But the results of the blood draw alone are not enough to prove that the statement was intentionally or recklessly false. The blood draw was taken after Harbach was airlifted from the Manchester medical center to St. Lukes Hospital in Cedar Rapids, which Knipper testified was approximately three hours after he observed the smell of alcohol. Given the relatively quick dissipation of alcohol from the bloodstream, *see, e.g., State v. Johnson*, 744 N.W.2d 340, 344 (Iowa 2008) (holding that the natural dissipation of alcohol provided exigent circumstances to support warrantless blood draw following serious accident where "more than two and a half hours passed between the time of the accident and the time Johnson's blood was drawn"), the fact that a blood draw taken hours later reported no alcohol does not establish that Knipper lied when he said he smelled alcohol coming from Harbach, let alone that any misstatement was intentional.

Based on its review of the bodycam video, the district court also discredited Knipper's claim to have smelled alcohol because he was only in the ambulance for a short time and it was "unclear what [Knipper] could smell in the ambulance given all the medical supplies contained inside." But video footage sheds no light on what an officer can smell. Officer Knipper had extensive training and experience investigating OWIs, including what an alcoholic beverage smells like on a driver's breath. Knipper testified he was within a foot-and-a-half of Harbach when he was inside the back of the ambulance. Harbach presented no evidence that smells emanating from other medical supplies inside the ambulance were so strong they would have prevented Knipper from smelling alcohol coming from Harbach. Nor was there any evidence that the smell of medical supplies could be mistaken for the smell of an alcoholic beverage such that the medical supplies could have been the source of the alcohol Knipper smelled. And the district court

certainly couldn't tell either of those things from viewing the bodycam footage. Further, for purposes of determining whether Harbach showed that Knipper's statement that he smelled alcohol was in fact false, we cannot ignore that the serum report from the Manchester medical center—taken much closer in time to the accident—showed an ethanol level of 42. We can take judicial notice that an ethanol level computes to a .042 blood alcohol content.[3] That Knipper was unaware of that fact is irrelevant, as he did not rely on that report to support the warrant application. But it does refute the district court's reliance on the later lab report that showed no alcohol in Harbach's blood three hours after the accident to conclude that Knipper could not "smell what is not present."

Even so, to the extent the district court was suggesting that Knipper's smell of alcohol could have been from medical supplies in the ambulance rather than from Harbach's person, that fact would not make the statement that he smelled alcohol false. It would only make Knipper mistaken as to the source. But a mistake does not rise to the level of an intentional or reckless falsehood. *See Groff*, 323 N.W.2d at 210–12 (concluding that the officer's negligence in failing to verify information included in a warrant application did not satisfy the *Franks* requirement that the statement be included intentionally or with reckless disregard for the truth). That other explanations might exist for an officer's observations is insufficient to establish the statement's falsity. *See id.* Harbach failed to establish that Knipper's statement that he smelled alcohol was false, let alone that it was intentionally false, and it should not have been excised from the warrant application.

---

[3]*See* Preeti Dalawari, *Ethanol Level*, Medscape (Nov. 19, 2019), https://emedicine.medscape.com/article/2090019-overview?form=fpf [https://perma.cc/G2PB-QEPF] ("To convert serum ethanol level to BAC, move the decimal point 3 places to the left. Example, a 100 mg/dL serum ethanol level is equivalent to a 0.10 (g/dL) BAC.").

2. *Bloodshot, watery eyes and slurred, mumbled speech.* Based on the district court's review of the bodycam video, it also concluded that Harbach did not have bloodshot, watery eyes or slurred, mumbling speech. We acknowledge that an officer's bodycam footage can provide valuable information to a court reviewing events that are otherwise only available through witness testimony. It is tempting for a reviewing court to make its own determination of whether probable cause exists to support a warrant after watching a bodycam video. But that is not the purpose, nor the function, of a *Franks* hearing. As a general matter, obtaining a warrant from a neutral judge is the preferred method of obtaining evidence. In the context of challenges to a warrant affidavit—which starts with a presumption of truthfulness—courts must be careful not to simply conduct their own de novo review for probable cause based on what can be seen on a bodycam video. *See Gates*, 462 U.S. at 236 ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' 'A grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, [and] 'courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " (second and third alteration and omission in original) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969), *abrogated in part on other grounds by Gates*, 462 U.S. at 214, and *United States v. Ventresca*, 380 U.S. 102, 108, 109 (1965))).

The district court determined that Knipper lied when he said Harbach's eyes were bloodshot and watery because it did not believe the video showed that. While a good view of Harbach's eyes in the video might have corroborated Knipper's observation, the video is not so clear or the angle so direct that one

could conclude that Harbach's eyes were not in fact bloodshot such that Knipper was lying when he made that statement in the affidavit. Again, it is not the officer's burden to corroborate his affidavit; it is the defendant's burden to prove the affidavit contains intentionally false statements. *See Groff*, 323 N.W.2d at 207–08. The same is true with respect to the district court's belief that Harbach's speech was not slurred or mumbling. The audio from the bodycam is not so clear to capture everything that Harbach said. And critically, the district court conceded that "[a]t times [Harbach] was muttering," so it agreed with the fact of muttering speech. Nonetheless, the district court provided an alternate explanation—that Harbach "was muttering due to the pain" as apparently revealed by the fact that he was strapped down to a backboard in a neck brace. Whether there was another explanation for muttered speech is a different issue from whether the video shows that Knipper had to have been lying when he said Harbach's speech was slurred or mumbling.

Even though bodycam footage can be useful, courts should be careful in relying on the footage when determining specific facts that are not easily observable from the video. This is especially true in the context of *Franks* challenges, where the statement need not only be false but must also be made with intentional or reckless disregard for the truth. Small details such as bloodshot or watery eyes are not clearly observable from the footage. The bodycam video does not support the district court's conclusion that Knipper was lying when he stated that Harbach had bloodshot, watery eyes and that his speech was slurred and mumbled.

3. *Misrepresentation by omission.* The *Franks* doctrine applies to "situations involving the omission of crucial information from a warrant application as well as the inclusion of inaccurate information." *State v. Poulin*, 620 N.W.2d 287, 289 (Iowa 2000) (en banc). When a defendant challenges

omitted information, he must show "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Johnson*, 75 F.4th 833, 841 (8th Cir. 2023) (quoting *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015)). "Reckless disregard requires showing that the officer 'must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information.'" *Id.* at 841–42 (quoting *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019)); *see also United States v. Hines*, 62 F.4th 1087, 1094 (8th Cir. 2023) ("[R]eckless disregard for the truth may be inferred . . . only when the material omitted would have been clearly critical to the finding of probable cause." (omission in original) (quoting *United States v. Randle*, 39 F.4th 533, 537–38 (8th Cir. 2022)).

Thus, a defendant may challenge the warrant application as deliberately omitting a material fact that would cast serious doubt on the existence of probable cause if it had been included. *Green*, 540 N.W.2d at 656. Upon determining that the omissions were material and intentionally (or at least recklessly) excluded to make the application misleading, the court then includes that information in assessing whether the application establishes probable cause. *See Franks*, 438 U.S. at 156; *United States v. Buchanan*, 167 F.3d 1207, 1210 (8th Cir. 1999).

An officer is not required to include all facts in the warrant application, even those exculpatory to the defendant. *See State v. Ripperger*, 514 N.W.2d 740, 745 (Iowa Ct. App. 1994). The core inquiry is whether the issuing judge was presented with sufficient evidence to determine whether probable cause existed under the totality of the circumstances. *Id.* at 746. In *State v. Ripperger*, the defendant argued the warrant application left out critical facts that tended to

show his innocence. *Id.* at 745. In that case, the defendant pointed to the officer's testimony that the officer "felt he had no duty to include facts in the warrant application which tended to show that the suspect (Ripperger) was not guilty" to establish that the officer had intentionally omitted material information. *Id.* Our court of appeals concluded that the officer's concentration on facts supporting probable cause was not fatal to the warrant as long as the evidence presented did not prevent the judge "from exercising his function of independently reviewing the facts to determine whether probable cause existed." *Id.*

In *State v. Green,* officers obtained a warrant to search the defendant's home after his girlfriend, Rosemary McGivney, was reported missing. 540 N.W.2d at 653. The warrant application in *Green* included a copy of a missing persons report, the officer's observations that McGivney's car was present at Green's residence, Green's refusal to allow officers to search his residence, and information about a number of domestic abuse calls at the residence when Green and McGivney lived together as facts to support probable cause. *Id.* at 655–56. Green argued that the officer deliberately omitted Green's assertion that he bought McGivney's car—an explanation for why it was in his garage—and that the omission cast doubt on the existence of probable cause. *Id.* at 657. We concluded that this omission was immaterial because the judge did not rely on the car's presence at Green's house in determining whether probable cause existed for the warrant, so the presence of an alternate explanation would not have mattered. *Id.*

In district court, Harbach challenged the affidavit for omitting information about his physical condition. Harbach pointed out that while the affidavit included observations of impairment, such as bloodshot and watery eyes, it omitted the fact that he suffered an eye injury as a result of the accident. However, this assertion is not entirely accurate. Although Knipper did not specify

that Harbach had scrapes on his face, as can be seen in the bodycam footage, he did state that Harbach had "injuries consistent with" being in a rollover accident. That Harbach had scrapes around his eyes does not detract from the fact that his eyes were bloodshot and watery, which provides evidence of intoxication. *Green* and *Ripperger* establish that a warrant affiant need not include all exculpatory information or facts that could provide an alternate explanation for the stated observations. The observation of bloodshot and watery eyes does not become misleading simply because there may be an alternate explanation that was not explicitly included in the warrant application. The judge only needs to receive the information necessary to determine whether probable cause exists under the totality of the circumstances.

Furthermore, there is no indication that Knipper intentionally or recklessly omitted information about Harbach's physical condition in an attempt to mislead the judge. On this point, we find the Michigan Court of Appeals decision in *People v. Sternberg*, No. 217022, 1999 WL 33436061 (Mich. Ct. App. Sept. 3, 1999) (per curiam), to be instructive. In that case, the trial court granted the defendant's motion to suppress her blood test results following a car accident because the affidavit failed to include the officer's observation that the defendant's emotional condition—not intoxication—may have caused her watery eyes and the omission constituted a material misrepresentation. *Id.* at *1. The appellate court disagreed, concluding that the defendant had not established that the officer made this omission with intentional or reckless disregard for the truth. *Id.* at *2. Rather, the officer testified it was unclear whether the defendant's watery eyes and flushed face were more closely related to the accident or her emotional condition. *Id.*

At the suppression hearing, Deputy Knipper testified that he did not know the physiological effects of car accidents on the human body when asked if it

was common for people to have bloodshot eyes following an accident. This does not rise to the level of a deliberate omission of facts about Harbach's physical condition from the accident. The issuing judge knew that Harbach sustained physical injuries because the warrant application stated that he had "injuries consistent with being involved in a motor vehicle accident." Knipper also described the accident as a "one-vehicle rollover" and stated that the vehicle rolled at least once, landing on its top. The deputy's failure to include every detail about Harbach's injuries does not make the affidavit misleading.

We conclude that Knipper's description of the nature of the accident and his statement that Harbach suffered injuries consistent with being in a rollover vehicle accident sufficiently apprised the issuing court of his condition. None of the omitted information made the affidavit misleading.

4. *Refusal to submit to preliminary tests.* The warrant application stated that Harbach "refused" to take a preliminary breath test or an HGN test. Harbach did not challenge these statements in his motion to suppress, and the district court did not consider whether Knipper's assertions that Harbach refused those tests were intentionally or recklessly false. The court of appeals nonetheless reviewed the video and concluded that Knipper never asked Harbach to perform either an HGN or a breath test, so his assertion that Harbach refused these tests was intentionally or recklessly false. As a result, the court of appeals concluded that statement should have been excised from the affidavit before assessing whether probable cause was supported. It nonetheless concluded that even without this information, the affidavit provided sufficient probable cause to issue the warrant.

We question whether this issue is even properly before us. In his motion to suppress, Harbach argued that Knipper's observations that he smelled alcohol and observed Harbach's bloodshot eyes and slurred speech were false such that

Knipper lacked the requisite suspicion to even conduct field sobriety tests. But Harbach never complained to the district court that he in fact was never requested to take the tests. Nonetheless, like the court of appeals, we remove these statements in determining whether there was probable cause to support issuing the search warrant.

**C. Probable Cause.** After excising the information regarding Harbach's refusal to consent to preliminary tests, our task is to determine whether the search warrant application on its face established probable cause to issue the warrant. *See ONeil v. United States*, 966 F.3d 764, 771 (8th Cir. 2020) (explaining that "only the information found within the four corners of the affidavit may be considered" in assessing probable cause and holding that even after the false information was excised, the remaining information contained in affidavit supported probable cause (quoting *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003))); *see also Bracy*, 971 N.W.2d at 567 (explaining that "we examine only the information actually presented to the [issuing] judge" without "strictly scrutiniz[ing] the sufficiency of the underlying affidavit," which we interpret "in a common sense, rather than a hypertechnical, manner," and we "decide close cases in favor of upholding the validity of the warrant" (first and second quoting *McNeal*, 867 N.W.2d at 99, 100; third quoting *Gogg*, 561 N.W.2d at 364; and fourth quoting *Baker*, 925 N.W.2d at 614)).

Even without considering the excised information regarding the refusal to consent to testing, the remainder of the search warrant application established probable cause. Harbach was involved in a single-vehicle accident on a sunny day. The officer observed that he had bloodshot and watery eyes and that his speech was slurred and mumbled. And most importantly, the officer smelled an alcoholic beverage coming from his person. With respect to this last fact, contrary to the district court and the dissent's assertion, there is no evidence in this

record that that statement was false. Indeed, both the district court and the dissent ignore the medical test taken closer to the time of the accident showing Harbach had a blood alcohol content of .042. The remaining facts in the warrant affidavit are sufficient to establish probable cause. *See State v. Wenzel*, 987 N.W.2d 473, 483 (Iowa Ct. App. 2022) (holding probable cause for a search warrant was established based on the defendant's bloodshot eyes, slurred speech, poor driving, and rejection of field sobriety tests that were facts included in the application); *see also State v. Harris*, 490 N.W.2d 561, 563 (Iowa 1992) (stating that the odor of alcohol on the defendant's breath and bloodshot, watery eyes is sufficient to support a finding of probable cause in a drunk driving context (citing *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981))).

**III. Conclusion.**

The district court's suppression order is reversed, and the case is remanded for further proceedings consistent with this opinion.

**COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Christensen, C.J., and McDonald and May, JJ., join this opinion. Waterman, J., files a dissenting opinion, in which Mansfield and McDermott, JJ., join.

**WATERMAN, Justice (dissenting).**

Imagine you find several pieces of rancid meat in your bowl of stew. Would you remove them and keep eating or discard the entire bowl? The district court correctly discarded the bowl. I would affirm the district court's ruling granting the defendant's motion to suppress after the court found Deputy Knipper intentionally or recklessly made materially false statements and omissions in his warrant application. My colleagues in the majority, and on the panel of the court of appeals, err by reversing that ruling. They strain to save the warrant application despite its rancid pieces. Not me. Once all the false statements are removed, the remainder falls short of establishing probable cause. I respectfully dissent.

I'll start with the facts. As the district court noted, Deputy Knipper's attitude changed when he learned the driver was Jesse Harbach. He jumped to the conclusion that the accident involved drunk driving before he got close enough to talk to Harbach. Remarkably, Deputy Knipper's warrant application never disclosed the fact that upon his arrival at the scene of the rollover accident, Harbach was already strapped onto a stretcher with a neck brace. That omission is materially misleading. The deputy's own bodycam video captured his entire interaction with Harbach and disproves material statements in his warrant application. Here is where I land based on my own de novo review of the record, including the video:

- Deputy Knipper wrote that Harbach refused the preliminary breath test (PBT) and horizontal gaze nystagmus (HGN) test. Those tests were never offered, and one cannot refuse a test that was never offered. As the court of appeals determined, the deputy's false statement regarding the test

refusals was made intentionally or recklessly. The majority concedes that his statement must be excised under *Franks*.

- Deputy Knipper wrote that he smelled alcohol on Harbach's breath. On video, Deputy Knipper states twice he could only smell gasoline. Inside the ambulance, Deputy Knipper never says aloud that he smelled alcohol. Harbach's subsequent blood test showed zero alcohol in his bloodstream. As the district court stated, "[H]ow could one smell what is not present?" I agree with the district court that the deputy's statement about smelling alcohol on Harbach was false and made intentionally or recklessly.

- Deputy Knipper checked boxes indicating Harbach had "bloodshot eyes" and "watery eyes." I agree with the district court that the video "does not show a person with bloodshot or watery eyes."

- Deputy Knipper wrote that Harbach "refused to answer *any* questions." (Emphasis added.) This statement, too, is false and made knowingly or recklessly. In fact, Harbach volunteered his version of the accident: that he swerved to avoid an Amish buggy, as independent witnesses confirmed at the scene. And when Knipper asked him if he had anything to drink, Harbach answered no. When pressed with more questions, Harbach begged off due to his pain. Harbach had to be airlifted to Cedar Rapids for treatment.

- Deputy Knipper checked boxes indicating Harbach had "slurred speech" and "mumbling speech." I agree with the district court that the video disproves those claims.

I agree with the district court that once Deputy Knipper's false or recklessly untrue statements are excised from the warrant application, all that's left is the mere fact that Harbach was in an accident, injuring only himself. We have never

held that an accident alone is sufficient to establish probable cause. Do we want any driver who gets in an accident to be subject to a forcible blood draw?

The district court, upon hearing Deputy Knipper testify in person at the suppression hearing and after viewing the bodycam video, made factual findings and credibility determinations. The district court found that Deputy Knipper knowingly made false or recklessly untrue statements in his warrant application. I reach the same conclusion after reviewing the transcript of his testimony and watching the same video. While our appellate review of a *Franks* determination is de novo, we can and should give weight to the district court's credibility determinations based on live testimony. *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019) ("We give deference to the district court's factual findings, but they do not bind us." (quoting *State v. Scheffert*, 910 N.W.2d 577, 581 (Iowa 2018))); *State v. Simpson*, 528 N.W.2d 627, 634 (Iowa 1995) (en banc) ("We defer to the trial court on matters of credibility of witnesses" who testify live at a *Franks* hearing), *overruled on other grounds by State v. Webb*, 648 N.W.2d 72 (Iowa 2002). The majority fails to give appropriate deference to the district court's credibility and factual findings.

Instead, the majority is overly deferential to the contents of the warrant affidavit, even after acknowledging part of it must be excised as false. And the State's appellate brief relies on "the cardinal rule that the court does not consider matters that are subsequent to the warrant to determine the validity of the issuance of the warrant." It is true that when reviewing the magistrate's issuance of a search warrant, we consider only the information in the warrant application. *See State v. Thomas*, 540 N.W.2d 658, 662 (Iowa 1995) (en banc) ("[A]ny probable cause review in response to a motion to suppress must be made upon the basis of the information presented to the magistrate at the time the warrant was issued . . . ." (alteration in original) (quoting 1 Wayne R. LaFave, *Search and Seizure: A*

*Treatise on the Fourth Amendment* § 3.1(d) (2d. ed. 1987))). But in a *Franks* hearing, new information outside the four corners of the application can and should be considered on the issue of whether statements in the application are false and whether false information was submitted intentionally or recklessly. *See United States v. Finley*, 612 F.3d 998, 1003 n.7 (8th Cir. 2010) ("Refusing to consider evidence from beyond the affidavit would contravene the purpose of a *Franks* hearing and run contrary to common sense."). In many cases, that additional information includes the officer's bodycam video and subsequent lab results. As the Texas Court of Criminal Appeals aptly observed:

> When a challenge is made as to whether a search warrant affidavit is legally sufficient to show probable cause, the trial court is limited to the "four corners" of the affidavit. *See Gaston v. State*, 440 S.W.2d 297, 302 (Tex. Crim. App. 1969). This is entirely different from a challenge to the truthfulness of a warrant affidavit and whether the affiant made knowing misrepresentations to establish probable cause. When the defendant challenges the warrant affidavit on the ground that it contains known falsehoods, as is the case here, the trial court is not limited to the "four corners" of the affidavit. *See generally*, George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* §§ 6.36–6.43 (2d ed. 2001). Limiting a falsity challenge to the four corners of the warrant affidavit negates the underlying challenge and raises serious due process concerns. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (stating that "if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment *requires* that a hearing be held at the defendant's request") (emphasis added). Thus, if a defendant has made a substantial preliminary showing of deliberate falsity, the trial court is *required* to go behind the "four corners" of the affidavit in a *Franks* evidentiary hearing.

*Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003) (parallel citations omitted).

The majority itself relies heavily on an unexplained Manchester lab test never mentioned in either warrant application. That document refers to an "ethanol level" of "42." The district court gave that no weight. The court of appeals also gave "no weight" to that report "because the record is devoid of any

explanation of the medical or scientific significance of that information." Without citing any case authority, the majority takes judicial notice to convert that number to a .042 blood alcohol content for Harbach. That is error. In *State v. Washington*, we addressed the limited nature of appellate judicial notice:

> [No] appellate court should ever take judicial notice of any facts that might control constitutional adjudication without informing all counsel and sending the case back to the trial court to give counsel an opportunity to show the erroneous or irrelevant nature of the facts judicially noticed.

832 N.W.2d 650, 656 (Iowa 2013) (alteration in original) (quoting *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 813–14 (Iowa 1983)). The State, as the proponent of the Manchester lab report, failed to lay any foundation for its admissibility. *See State v. Wolfe*, 369 N.W.2d 458, 459 (Iowa Ct. App. 1985) (holding that breath test results should not have been admitted into evidence because the accuracy and reliability of the testing method was not proved by the State as the proponent of the evidence). Like the district court, I instead rely on the unchallenged Iowa Division of Criminal Investigation lab report showing Harbach had zero alcohol in his bloodstream.

The majority tries to minimize the material omissions from the application, most notably that when Deputy Knipper first spoke with Harbach, he was strapped to a backboard, wearing a neck brace, and receiving medical attention. Then, when the deputy spoke with Harbach a second time, Harbach was inside the ambulance, still on the backboard and in a neck brace, receiving further medical treatment. These intentional omissions are "critical." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4(b), at 677 (6th ed. 2020). "Any reasonable person would have known that this was the kind of thing the judge would wish to know." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (holding that the officer materially misled the magistrate

when the officer stated in his affidavit that the police dog showed an interest in a box but omitted the fact that the police dog did not alert to the box).

The majority also downplays demonstrably false statements, such as Harbach's refusal to take the PBT or HGN tests. The majority questions error preservation because Harbach's motion to suppress did not explicitly mention them. Yet Harbach successfully challenged the veracity of the warrant application in the district court and won the ruling granting his motion to suppress. As appellee, he was not even required to file an appellate brief. Iowa R. App. P. 6.903(3) (allowing appellee to waive filing a brief). The State does not argue Harbach failed to preserve error. No rule of error preservation precludes our consideration of any part of the record supporting Harbach as appellee. Harbach claimed, and the district court agreed, that he was entitled to suppression based on false statements or omissions made intentionally or recklessly. On our de novo review, we can consider any statement in the warrant application, even if Harbach did not specifically cite it below. *See Feld v. Borkowski*, 790 N.W.2d 72, 83 (Iowa 2010) (Appel, J., concurring in part and dissenting in part) (explaining that "once a claim is properly presented, a party is not limited to arguments presented below").

Bodycam video is especially important in *Franks* hearings when the officer's credibility is at issue. The majority downplays the video; I embrace it, as did the district court. The bodycam video exposed false statements by Deputy Knipper, including that Harbach refused the PBT and HGN tests that in fact he never offered him and that Harbach refused to answer "any" questions. And the video exposed his material omissions about Harbach being strapped to a stretcher and neck brace. Without that video, our search for the truth is hindered. Our court has relied on our own review of bodycam video in other decisions. *See, e.g., State v. Park*, 985 N.W.2d 154, 170, (Iowa 2023) (relying on

our court's "independent review of the bodycam video" to evaluate *Miranda* claims). In many cases, dashcam and bodycam video corroborates the officer's testimony at a suppression hearing. *See State v. Abu Youm*, 988 N.W.2d 713, 717 (Iowa 2023) (concluding officers testified consistent with their bodycam video supporting emergency aid exception to warrant requirement). *But see id.* at 729 (McDermott, J., dissenting) (concluding bodycam video showed lack of urgency). At times, the officer will be impeached by the officer's own bodycam, as happened here. *See State v. Chauvin*, 989 N.W.2d 1, 19–20 (Minn. Ct. App. 2023) (finding video refuted Officer Chauvin's claim that his knee was not on George Floyd's neck).

Nothing in Deputy Knipper's bodycam video corroborates his claims that he was close enough to smell an alcoholic beverage on Harbach's person, that Harbach's speech was slurred, or that his eyes were bloodshot or watery. After the video affirmatively showed the deputy lied about Harbach refusing the PBT or HGN tests and about Harbach refusing to answer *any* questions, why believe the rest of his claims? Do you eat more stew after finding a rancid piece of meat?

I fear today's opinion will undermine *Franks*. The warrant application was replete with false statements. I would affirm the suppression ruling to support the purpose of *Franks*: incentivizing truthful warrant applications and deterring false statements in them. *See Franks*, 438 U.S. at 168 ("[T]hat a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile."); *State v. Groff*, 323 N.W.2d 204, 208 (Iowa 1982) (adopting *Franks* for Iowa constitutional claims to better serve its purpose: "to deter constitutionally violative police conduct").

For these reasons, I am unable to join the majority opinion.

Mansfield and McDermott, JJ., join this dissent.